Chew, President,
 

 delivered his opinion, in general terms, in affirmance of the sentence of the Register’s Court.
 

 M'Kean,
 
 Chief Justice.
 

 There has been no case or precedent cited, which comes up to this, in all its parts; but there are several cases, which depended upon the same principle.
 

 •Before the ftatute of 29
 
 Car. 1 ch.
 
 3. Wills in
 
 England
 
 might be revoked by any exprefa words, without writing’; and fo it was in
 
 Pennjylvania,
 
 until altered by poiidve law; but in
 
 England,
 
 fince that ftatute,-' and in
 
 Pennjylvania,
 
 fines the act of Aflbmbly, of the
 
 üth of Anne,
 
 “concerning the probates of written and noncupative Wills, and for confirming devifes of lands,” Wills of
 
 lands
 
 muft be revoked by writing, accompanied with folemnities fimilar t« thofe neceflary fot making the Wills.Here, latter Wills of lands, Of a writing, revoking a formed Will, muft be proved by two or more credible- witnefies ; and no
 
 Eejlament,
 
 or Will in writing, for
 
 perfonal ejlate,
 
 can be revo-* ked by
 
 words,
 
 except the fame be committed to writing and read to the teftator, is allowed by hint, and proved by two witnefies at leaft; Bebdes thefe
 
 a Eludí
 
 revocations, there are Other a els of the teftator, which have always been confidered as revocations, becaufe
 
 contrary to, ot inconfflent
 
 with, the Will, and evidencing an alteration of intention ; as'a deed in fee ; or aleafe for years-to the fame devifee, to commence, after -the teftator’s death ; a. fubfequent mafriage and birth of a child
 
 y
 
 cancelling, obliterating or deftroying the Will, arid fuch like. Thefe are termed, c{
 
 implied,
 
 confin/ctivc, of
 
 legal,
 
 revocations,” and fttil fubfift ?s they were before the aft of Aflbmbly, or the -ftatute of frauds,
 
 Cro. I.
 
 40,
 
 Carth.
 
 Si. But all prefumptive revocations may be encountered by evidence, and rebutted by other circumftances*
 
 Cowp.
 
 53,
 
 Doug.
 
 37.
 

 It has been often determined, that a Will, revoked by a subsequent Will, but not cancelled, was re-established by the cancellation of the subsequent Will. 1
 
 Show.
 
 537. Show.
 
 P. C. 146.
 
 1
 
 Will.
 
 345. 2
 
 Vern.
 
 741. S. C.
 
 Prec. Chan.
 
 459.
 
 S. C.
 
 4.
 
 Burr.
 
 2512.
 
 Cowp.
 
 86. 92.
 
 Doug.
 
 40. 2
 
 Blackst.
 
 937. 3
 
 Mod. 204.
 
 Salk. 592. 3
 
 Mod.
 

 There are, however, some particular circumstances, in this case, besides the general question.
 

 It appears, that the appellant had lived in the neighbourhood of the testatrix when she made the Will of 1779; that the legatees in that Will were chiefly the same as in the present, but some legacies were larger, on account of the money being then depreciated, and that
 
 Oliver Anderson
 
 was expressly requested by the testatrix to take care of the Will of 1775, left
 
 *290
 
 the last should get into the hands of the appellant, or be lost. On the other hand, it does not appear what became of the Will of 1779, after it was sent and delivered to the testatrix, whether it was destroyed by her, or any other person,—but it cannot be found. It does not appear, wherein the Will of 1779 differed from the present one nor what alteration was thereby made in particular, only that there were partial alterations, and there were no executors named in it.
 

 In this view of the case, I am of opinion, that the mere circumstance of making the Will of 1779, is not
 
 virtually
 
 a revocation of the former, the contents being unknown, and it not appearing to have been in
 
 esse
 
 at her death, but rather the contrary, and that she had cancelled or destroyed it. No other person was interested in its destruction, from any thing I can discover, except the appellant, or his brothers, who were not in
 
 America
 
 ; and charity will induce a presumption, that she herself destroyed it. If this is the fact, the first Will is not thereby revoked, as neither could be
 
 complete
 
 Wills, until the death of the testatrix, and her destroying it had the same effect as if it had never existed, unless it had been clearly proved, that she did it with an intention to die intestate. Should a contrary opinion hold, to wit, that the first Will was revoked, at the
 
 instant
 
 the second was executed, yet the cancelling of the second by the Testatrix herself is a revival of the first, if undestroyed. Co
 
 wp.
 
 92
 
 Harwood v. Goodright.
 

 Here is a good
 
 subsisting
 
 Will properly attested : There is no way to defeat it, but by proving it was revoked by another Will,
 
 subsisting
 
 at the death of the Testatrix, or that she cancelled the latter Will, so revoking all former ones, with a mind to die intestate. And as the appellant has failed in such proof, I concur with the President, that the Will of 1775 must stand ; and that the sentence of the Register’s Court be affirmed, with double costs.
 

 The Court concurring, the sentence of the Register’s Court was, accordingly, affirmed, with double costs.
 
 *
 

 *
 

 See
 
 ant. p.
 
 266
 
 Boudinot et al.
 
 Executors against
 
 Bradford.