Curia, per Woodworth, J.
This cause first came before the court on a motion for a new trial; and is reported in 4 Cowen, 483. Several points were then adjudged. It was held that, to warrant the giving of parol evidence of the contents of a will not shown to be destroyed, it must be first proved that diligent search had been made at the place where it was most likely it would be found, and that such search might be proved by a party in .the cause, though he be interested; it being addressed to the court in order to let in secondary proof. [1] It was also held that where the execution of a will is established, in order to revoke it, there must be some outward and visible sign of revocation or cancelling anima revocandi, [2]
A new trial was granted; and at the next trial the judge nonsuited the plaintiff, on the ground that it was necessary to show the existence of the will subsequent to the execution of the codicil. This court held that there was suffi cient evidence to go to the jury; and that it should have been submitted to them. (6 Cowen, 377.) It is here proper to observe, that the court were not called on to decide what was or was not sufficient evidence of revocation. When the judge nonsuited the plaintiff, the cause had not arrived at a point when it was necessary to pass on the defence. He had not, and could not with propriety, have been called on to express an opinion as to the proof of revocation. The nonsuit was for defect of proof on the part of the plaintiff, that it was prima facie insufficient; consequently if there are expressions in the opinion *234 delivered, which go *beyond the question presented to us, they form no part of the point decided, and are liable to be examined and tested by the rules of law.
On the last trial, the counsel for the defendant cited the case in 6 Cowen, to prove that the evidence offered for the purpose of showing a revocation, ought to be submitted to the jury to pass on. They relied on an expression in the opinion, that whether the will was among the papers which Mrs. Ayers testified her father burned in March, 1822, should also have been submitted to the jury. The force and relevancy of that testimony had never been argued or considered by the court; consequently the judge who held the circuit was at liberty to lay down the law differently, if the doctrine contended for was, in his opinion, incorrect. At the circuit, he thought the law otherwise, and so declared it. If he erred, it is not for disregarding an adjudged case; but in deciding incorrectly a point that had not been adjudged in this court. I will now proceed, more particularly to consider the exceptions taken at the trial. '
The plaintiff offered to prove that the day before the testator was taken sick, he called upon Lockwood and requested him to draw a codicil to his will. This evidence was objected to, but admitted. Lockwood testified that the testator applied to him to draw a codicil; but it was not done. The will was not produced.
It is not material, in the decision of this cause, whether Lockwood’s testimony was competent or not; for it will be seen in the view taken, that the will was sufficiently proved independent of this evidence, and did not require its support. The rule is, that if the testator lets the will stand until he dies, it is his will; if he does not suffer it to do so, it is not his will. It is ambulatory until his death. (4 Burr. 2514.)
The exception to the admissibility of Brown as a witness to the court, to prove the loss of the will, and that due search had been made, was properly overruled. The admissibility of this evidence had received the sanction of the court in 4 Cowen, 491. I will not therefore add any thing on this point.
*235 The plaintiff offered parol evidence of the contents of the will, which was objected to on the ground that he had not *sufficiently accounted for the non-production. This was overruled.
In 4 Cowen, 483, the court decided what was necessary to be made out in order to warrant the giving of parol evidence. It is believed that the rule there laid down was fully complied with; there being proof of diligent search for the will in places where it was most likely to be found.
The defendant then offered to prove that one of the daughters had a large family, and the parents were unable to support them; and also the situation in point of property of the other children. This was overruled as altogether irrelevant and afforded no ground of an implied revocation. These considerations were present to the mind of the testator when he made his will. It does not appear that they had arisen since its execution; but be that as it may, by law he had the absolute right to disregard the supposed claims of his children; and might have willed his property to a stranger, had he been so disposed. I am not aware of any case or principle that sanctions the competency of such evidence.
The opinion of the judge, as delivered at the close of the evidence, presents the most important question in this cause. He observed, “that if the will was duly executed, and once an existing will, and in the hands of the testator, unless there be evidence of its having been cancelled or revolted by the testator, the law presumes its continued existence to the time of his death”
That this is a principle of the common law, seems to me well settled by authority. [1]
*236 The mere fact that the will is not produced, raises no presumption that it has been cancelled, provided satisfactory evidence is given that, on diligent search in places where it would be most likely to find it, it could not be found. The court, ha^ heretofore decided, that on such proof, secondary evidence may be given and the will re?” in evidence. To. what purpose allow the copy of the wih to be given in evidence, if, notwithstanding, the non-production of the original raises a presumption that it has been revoked? If such had been the intention of the court, they undoubtedly would have said, when this cause came before them in 4 Cowen, the plaintiff must, in addition to the proof of diligent search, repel *the presumption of revocation. Proof of the first alone, is entirely useless unless accompanied by the other. ■ That nothing of this kind was in the contemplation of the court, as necessary to give effect to the will, I think evident from their silence. This omission must have arisen from the opinion formed, that the latter fact was unnecessary. Let the question be examined on principle. . The plaintiff is required to prove the will of the testator, and. produce it, or show legal grounds for dispensing with the production of the original. If the facts proved are such as the law sanctions, and excusé the production of the will, then the copy or contents of the will proved, necessarily stand in the place of the original, and have the same legal effect. This principle is familiar in the case of all written instruments. If the original is lost or. canpot be found, you may resort to secondary evidence; and if that is sufficient, it supplies the place of the paper lost, fir which cannot be found. In these cases was it ever urged as an objection, that, after full proof of the contents, *237 undisputed and unquestioned, a party was not entitled to all the benefits that would have arisen had the original been produced! I am not aware that any such objection has ever been sustained or even raised. It will be seen that the question of law in all these cases is what evidence will enable a party to resort to secondary evidence, when the original cannot be produced! The principle is general; and whether applied to a will or a deed, has equal effect. It places a party on the saíne ground as if secondary evidence had not been needed. It substitutes the copy or proof of contents for the instrument lost, or not found. From the nature of the principle, then, it follows, that a party cannot legally be called on to prove more than would be required if the original had been produced; and, in that case, I apprfehend no question of presumed revocation would be made, unless founded on other facts. That such was the opinion of the king’s bench, is manifest from the case of Harwood v. Goodwright, (Cowper, 88.) In that case a special verdict was found, that in 1748, the testator made a will, setting it out, that in 1756, the testator made another will, duly attested *that the disposition was different from the will of 1748; but in what particulars was unknown to the jurors. They further say, that they do not find that the testator cancelled or destroyed the will of 1756; but what has become of the will they are altogether ignorant.
The court decided, that although the latter will contained a different disposition from the former, yet, as the particulars of that difference were unknown, it was no revocation of the former will.
Here, then, was a case where secondary evidence was resorted to, and so much of the contents proved as to show there was a different disposition. No objection was raised by the counsel, or intimated by the court, that any presumption arose against the validity of the will by reason of its non-production. On the contrary it is manifest, the only difficulty was, that the jury were unable to find wherein the different disposition consisted. Had this been done, the court would have decided that the latter will revoked the former. This case was first decided in the common *238 pleas, and is reported in 3 Wilson, 497. That court held, that the latter will revoked the first; no suggestion was made, that the non-production varied the plaintiff’s rights. The only point was whether the contents were sufficiently found. Nares, justice, says, “ the second will is not found to be cancelled or destroyed; therefore it must be considered as in being.” De Grey, Ch. J., observes, “ when a man hath once declared properly what his mind is, as to the disposition of his lands, upon doing that, he is presumed to continue of the same mind till his death, unless the contrary appears.” The same doctrine is advanced by Sir John Nicholl, in Johnston v. Johnston, (1 Phillimore’s Rep. 466.) He observes, “the general rule certainly is, that a will once executed, remains in force, unless revoked by some act done by the testator, animo revocandi, such as burning, cancelling, making a new will and the like.” [1]
It is not perceived that there was any error in the opinion expressed by the judge at the trial on this part of the' case. The residue of that opinion is in these words : “ that the facts proved by the defendant were not sufficient, in judgment of law, to warrant the inference that the will had been cancelled *or destroyed by the testator, or to justify the jury in finding that the testator revoked his will; and that the counsel for the defendant could not be permitted to argue to the jury that those acts alone would justify them to find that the will had been revoked.”
If the judge was correct in laying down the law on the facts proved by the defendant, I presume it will be admitted, that the latter part of the opinion followed as a necessary consequence. Where facts are not disputed, the law arising on those facts is to be declared by the court. A different doctrine would at once invade the jurisdiction *239 oí the latter, and in effect transfer the decision of the law as well as the fact to the jury. Where the law and fact are so blended that they cannot be separated, the jury of necessity pass on both, under the advice of the court. If they err, the error will be corrected. But where the facts are conceded or fully established by proof, without contradiction, the law invariably adjudges as to the effect and operation of the facts. In such cases, it is the bounden duty of the court to state the law arising on the facts to the jury, whose duty it is to receive it as law from, the court. In the present instance the judge stated the law merely, and the duty of the jury. If he erred, this court will correct,the error ; but can never sanction the claim of counsel to appeal from the decision of the court to the jury. That such would have been the effect in this case, is manifest. The defendant had proved certain facts, on which he relied to satisfy the jury the will had been revoked. The plaintiff admits the truth of the facts ; the court decide that such facts are altogether insufficient; and are so considered in judgment of law. If the counsel argues to the jury, they are necessarily driven to contend that the facts are sufficient to warrant the jury in finding that the will was cancelled. It seems to me that no court would rightly discharge their duty in permitting such a course.
It only remains to consider, whether the facts were not wholly immaterial and irrelevant. They are the following: Lockwood drew a codicil, which did not vary the rights of the plaintiff in this action. He was employed to draw another, but did not; and no other appears to have been drawn.
*Nancy Ayres says the testator took with him a trunk when he left home the last time, and took papers with him in the trunk. She saw a bundle of papers, but did not move or examine them; thinks the bundle was two or three inches thick. A short time before he left home, he was very attentive to the arrangement of his papers at his desk. Once or twice she saw him burn papers taken from the desk. Some time before he went away, he took some papers, or something that looked like papers, to Troy. •
*240 Mrs. Ayres, again examined, says, that a short time before her father went from home in 1822, he took something from the desk which appeared like papers. He appeared to be shy about it, and was going to Troy. On her cross-examination she was not certain it was papers her father had in his silk handkerchief; she did not see him take it from the desk; but he had been to the desk, and had something wrapped in it.
Having shown that this will was duly executed, it remained in force unless revoked. The statute has prescribed, (1 R. L. 365,) that no last will shall be revocable otherwise than by some other will or codicil, or by burning, cancelling, tearing or obliterating such last will by the testator himself, or in his presence and by his direction and consent. As to burning—once or twice he burnt papers taken from the desk. In the first place, everything else apart, the presumption would be that a will executed deliberately and recognized five years afterwards, when a codicil was added, was not among the papers burnt, and particularly when no act or declaration of the testator manifested the least dissatisfaction. There is no proof or presumption, that the will was among the papers. The essential fact is wanting. Where was the will 1 The witness is ignorant; but this fact must be supplied; and it can only be supplied by conjecture. Would any court be justified in instructing a jury, that on such facts they might presume the will was among the papers burnt 1 It appears to me that such a charge would be well calculated to break down the landmarks of the law; to divest estates upon mere suspicion, and virtually operate as a repeal of the third section of the statute of wills.
*The residue of the proof is, if possible, less to the point. The testator took some papers with him in a trunk. At another time he had something in a handkerchief that appeared like papers. He had been at his desk, but the witness did not see him take it from the desk. He appeared shy, and was going to Troy. o From this evidence also, the defendant "wished to draw the inference of cancelling; and that, too, without evidence of the destruction of any *241 paper. The judge was gravely called on to permit th counsel to contend before the jury, tha.t enough had beei shown to find that the will had been revoked. If it ha been proved even that the will was taken from the desi by the testator, it would be no evidence of its ~subsequen destruction. But to proceed a step farther, and contern that an unknown paper was taken, that the will was thai paper, and must have been cancelled, appears to my mind gratuitous assumption, not warranted by the testimony.
Believing as I do, upon full consideration, that the evidence of revocation entirely failed, I am of opinion that the motion for a new trial be denied, [1]
New trial denied.

 As to the amount of proof necessary to establish the loss of original papers, and admit secondary evidence as to their contents, &c., see 2 Cowen & Hill’s notes to Phil. Ev. 441, et seq. where a synopsis of all the leading authorities on this subject may be found.

 A lunatic is incompetent to revoke a will. Smith v. Wait, 4 Barb. S. C. Rep. 28.

 This is not so ; but a revocation is always presumed where a will is traced to the possession of the testator, and cannot be found at his death. S. C. on error, 6 Wen. 173, 182, et seq. See also Legare & Wife v. Ash, 1 Bay. 464. Jones v. Murphy, 8 Watts & S. 275. Lawson v. Morrison, 2 Dall. 286. Lillie v. Lillie, 3 Hagg. 148. Wargent v. Holling, 4 Hagg. 245. Freeman v. Gibbons, 2 Hagg. 328. Colvin v. Frazer, 2 Hagg. 266. So where a duplicate will was left with the testator and could not be found after his decease. Richard v. Mumford, 2 Phil. 23. See further, Moor v. Metcalf, & De La Torre v. Moor, 1 Phil. 375. And as the law does not under, such cir *236 cumstcmceg, presume that the will was fraudulently destroyed, the burthen of proof rests on the party claiming under it, Loxley v. Jackson, 3 Phil. 128. Per chancellor in Betts v. Jackson, 6 Wen. 185. Wilson v. Wilson, 3 Phil. 552. Durant v. Ashmore, 2 Richardson’s South Carolina R. 184.
But by the R. S. 4th ed. 254, 5 8, no will can be proved as a lost or des. troyed will, unless it shall have been proved to have been in existence at the testator’s death, or shown to have been fraudulently destroyed in his lifetime; nor unless its provisions be clearly proved, by at least two witnesses, a eoii sect copy being deemed equivalent to one witness.

 These opinions of Ch. J. De Grey, and Justice Nares in the common pleas, were overruled on error in the king’s bench. 8 Cowper, 88. See also per Tallmadge in Betts v. Jackson, 6 Wen. 200. And the judgment of the king’s bench was affirmed on appeal in the house of lords. See 7 Brown’s Parl. Cas. 44. Nor does the case of Johnston v. Johnston, 1 Phillimore, 446, sustain the position for which it is cited in the text as it is analogous. There the will was present in court, and the question was, whether it had been revoked by the birth of children combined with other circumstances.

 The decision of Judge Woodward was reversed on error. See S. C. 6 Wen. 173.