ELIZA JONES *vs.* RICHARD T. EARLE, EXECUTOR OF ALFRED JONES.—*December* 1843.

In every case where a will is to be construed, the great object is to ascertain, from the face of the paper, the intention and design of the testator, which is to be carried into effect, unless opposed by some principle of positive law.

The will and the codicil constitute one instrument; and the codicil revoking in terms a portion of the will, has the effect to republish the will as of the date of the codicil, in respect to all parts of the will not revoked by the codicil, either in express terms, or by a bequest or devise, so entirely inconsistent with the terms of the will as to make it impossible to give effect to both.

A testator devised his slaves, in trust, to be manumitted as they severally arrived at the age of forty years, or immediately upon his real estate devolving on his grand nephew, should it come to his hands; and, *in trust also for the term they have to serve,* for the use of his wife and any child he may have by her, for and during the term of her natural life, and after her death for the use of any child that may survive her. By a codicil he revoked "that part of my will which manumitted my servants as they severally arrived at the age of forty years, and devised them to his wife, for and during her natural life, and *after her death* then said servants to be free; but in case that any of said servants shall runaway, and afterwards be apprehended, they shall forfeit their freedom and be sold for life." After the testator's death some of the servants ranaway, and were sold by the widow as slaves for life. The trustees under the will claimed the proceeds for the purpose of investment, and brought an action at law, (in which all errors of pleading were waived,) to recover them. HELD: that the widow was entitled to the fund absolutely.

It is only where, by gratifying a particular intent as to a part of a will, a more general and more important disposition of other parts of it are defeated, that the particular or minor intent must yield. Where both may be gratified there is no conflict, and consequently no necessity to yield either.

A bequest of freedom to slaves, as they arrived at a particular age, is not a legacy to them; nor, when it is granted upon condition of good behavior, will its forfeiture create a lapse, though the bequest of freedom is defeated, the right of the slave after forfeiture, nor to his proceeds after a sale, not being expressly bequeathed to any person.

Where there is a bequest of slaves for life, and of freedom after the death of the tenant for life, a clause in the will declaring forfeiture of freedom in case of running away and a sale for life upon their apprehension, is designed for the benefit of the tenant for life, to secure the good conduct of the slaves, and the proceeds of any such slave sold for absconding, in the absence of any provision to the contrary by the testator, will belong to the legatee for life.

APPEAL from *Baltimore* County Court.

This was an action of *Assumpsit*, commenced by consent of parties, under the following agreement:

It is hereby agreed, that all errors in pleadings be waived, and that the paper marked "Plaintiff's exhibit A," herewith annexed, is a true copy of the last will and testament of *Alfred Jones*, deceased, as well as of the codicil thereto annexed; that after the execution of the said will and codicil, the said *A. J.* departed this life, and that after his death, the said last will and codicil were duly proved and recorded; that after the same was proved and recorded, the said *Richard T. Earle* alone took out letters testamentary on the estate of said *A. J.*, and that after he the said *R. T. E.* became executor as aforesaid, he the said *R. T. E.*, with the consent of the said *Eliza Jones*, disposed of, and converted into money, all the cattle, sheep and hogs of the said *A. J.*, on his farm at the time of his death, and all the farming utensils, and a part of the household furniture of the said *A. J.*, and that the said *R. T. E.*, as sole trustee under the will, with the consent of the said *E. J.*, invested the said money in bank stock, under a decree of the Court of Chancery, affirmed by the Court of Appeals, for the benefit of the said *E. J.*, during her life, and for the benefit, after her decease, of *Arthur T. Jones*, who is named in said will. It is also admitted, that the said *R. T. E.*, as sole executor of the said *A. J.*, has paid all the debts and legacies of the said *A. J.*, and passed a final account, as executor as aforesaid, and hath delivered over to the said *Eliza Jones*, all the property, including the negroes, (except the negroes who had absconded at the time of said *A. J's.* death,) to be held by the said *E. J.*, during her natural life, and that the said *R. T. E.* has invested the stocks held by the said *A. J.*, at the time of his death, for the benefit of the said *E. J.*, during her natural life, and has paid the dividends thereof, which have hitherto accrued, as well as the dividends that have accrued on the stocks invested under the sanction of the Court of Chancery, to the said *E. J.* And it is further admitted, that since the said negroes have been delivered over to the said *E. J.*, one of them named *Jeff*, and another of them named *Peggy*,

did run away, and were subsequently apprehended, and sold as slaves for life, to purchasers out of the State, by the said *E. J.*, and that the said *E. J.* received the purchase money for the negroes so sold as aforesaid, and has ever since held the same; that the said sales were made without the consent of the said *R. T. E.;* that negro *Jeff* ran away about the 6th of August 1836, and was apprehended and sold by the said *E. J.* about the 20th of August 1836, for the sum of $800, and that the expenses of apprehending the said negro *Jeff*, amounted to $50, which expense was paid by the said *E. J.;* that about the 25th of March 1841, negro *Peggy* ran away, and that she was apprehended and sold about the 30th March 1841, for the sum of $575, and that the expenses of apprehending her amounted to seven dollars, which amount was paid by the said *E. J.* It is further admitted, that the said *R. T. E.*, as executor as aforesaid, had no knowledge of the said sales, at the time that they were made, and never consented thereto, and that since the said sales, and before the bringing of this suit, he demanded from the said *E. J.* the proceeds of the said sales, for the purpose of investing the same for the use of the said *E. J.*, during her life, and after her death, for the benefit of *Arthur T. Jones*, the residuary legatee in the will of the said *Alfred Jones*, but that the said *Eliza Jones* refused to pay over the said proceeds, and claimed the said slaves as having been forfeited to her. It is further agreed, that no objection is to be made to the form of this action. It is further admitted, that *R. T. E.* is the only trustee named in the will of *Alfred Jones*, who has accepted the trust; that the case be docketed to May term 1842 of *Baltimore* county court; that the nar, plea and foregoing statement of facts and argument, be filed, and that judgment *pro forma* be entered by *Baltimore* county court, for damages in nar, to be released on payment of $1,318, and costs, and that the defendant may appeal to the June term of Court of Appeals, without giving security.

The will of *Alfred Jones*, referred to in the statement, after disposing of his real estate, proceeded as follows:

"I give and bequeath unto my said friends, (*R. T. E.* and others,) their executors, administrators and assigns, *all my personal estate*, of every description: *In trust*, nevertheless, to *manumit all my slaves as they severally arrive to the age of forty years*, the said forty years of age to be determined by an entry in the last part of my oldest day-book, where I have made a list of their names and respective ages; and to manumit all my said slaves, immediately upon my real estate devolving on my said grand nephew, *Arthur T. Jones*, should it come to his hands; and *in trust also*, to hold my said estate, including my said slaves, for the time they have to serve, for the use of my said dear wife *Eliza Jones*, and any child or children I may have by her, for and during the term of her natural life, and after her death, for the use of my child or children that may survive her, their executors, administrators and assigns, for ever. If my said wife should have no child or children by me at her decease, or if my surviving child or children should die without lawful issue of their bodies, before they arrive at the age of twenty-one years, then, in trust, to hold my said personal estate, *except my slaves*, for the use of my grand nephew, *A. T. J.* aforesaid, his executors, &c., for ever." There were other devises over of the testator's personal estate *except his slaves*. The testator also made provision for the support of some of his *aged slaves*, then unable to labor. This will was dated on the 16th August 1830.

On the 15th February 1831, the testator added the following codicil to his will:

"I hereby revoke and make void that part of my will which manumitted my servants, as they severally arrive at the age of forty years, and do now give and devise all my said servants (except old *Harry*,) to my dear wife, for and during her natural life, and after her death, *then said servants to be free;* but in case that any of said servants *shall run away, and afterwards be apprehended*, they shall forfeit their freedom, and be sold for life. I do hereby give and devise to my dear wife the sum of one thousand dollars, to dispose of as she may think proper. If any of my servants, which I have at this time run

away, shall be apprehended *after* my death, I do hereby direct *that they shall be sold for life.*"

Upon this agreement, *Baltimore* county court rendered judgment for the plaintiff, and the defendant prosecuted this appeal.

At the argument here, the parties made further admissions, as follows:

It is admitted that *Alfred Jones* died, having had no child, nor descendant of a child, but leaving a brother at the time of his death, and that since the bringing of this suit, *Eliza Jones,* the appellant, has died, and that in deciding this case, the decision is to be the same as it would have been, if the suit had been brought after the death of *Eliza Jones,* against her administrator, except, that if the court should be of the opinion that no suit could properly be brought until after the death of *Eliza Jones.* Costs are to be allowed the appellant.

It is also agreed, that the record shall be amended, by inserting in lieu of the following agreement of counsel, (ante,) to wit:

It is agreed that the case be docketed to May term 1842 of *Baltimore* county court, &c., down to the words, "without giving security;" and signed by, &c. The following agreement, to wit:

It is agreed that this case be docketed to May term 1842 of *Baltimore* county court; that the nar, plea and aforegoing statement of facts be filed and submitted to *Baltimore* county court, for their judgment; and it is agreed, that if said *Baltimore* county court shall be of opinion, on the aforegoing statement of facts, that the plaintiff is entitled to recover, then said court shall give judgment for the plaintiff, on said case stated, for the damages in the declaration, to be released on payment of the sum of $1,318, and costs; and if they shall be of opinion, that on said statement of facts the plaintiff is not entitled to recover, then judgment is to be entered for the defendant for costs. And it is also agreed, that from the judgment of said court either party may appeal.

The cause was argued before Stephen, Archer, Dorsey, Chambers and Spence, J.

By G. R. RICHARDSON, D. A. G., and REVERDY JOHNSON
for the appellant, and
By G. M. GILL and McMAHON for the appellees.

CHAMBERS, J., delivered the opinion of this court.

In this, as in every other case in which a will is to be con-
strued, the great object is to ascertain, from the face of the
paper, the intention and design of the testator; which is to
be carried into effect, unless opposed by some principle of pos-
itive law.   The will and the codicil constitute one instrument;
and the codicil revoking, in terms, a portion of the will, has
the effect to republish the will as of the date of the codicil, in
respect to all parts of the will not revoked by the codicil either
in express terms or by a bequest or devise so entirely incon-
sistent with the terms of the will, as to make it impossible to
give effect to both.

The terms of this will are plain and perspicuous.   In the
contingency which occurred, and was apparently anticipated
by the testator, that is to say, the survivorship of his wife,
without children, she would have taken an interest in all his
negroes during her life, or until they should severally arrive to
the age of forty years, at which age they were to be succes-
sively manumitted by the trustees.   The will made no provi-
sion in regard to such as should abscond from service, nor any
distinction between such as should be faithful and such as
should be disobedient.

The existing provisions of our laws, however, have made
some distinctions on the subject.   If any one of these negroes
had absconded from the service of the legatee, the courts, on
her application, would have extended the term of service of
such negro beyond the age limited by the will for a period suf-
ficient to reimburse to her the loss of his service, and all cost
and expense in re-taking him.   That additional service would
have enured exclusively to her advantage.

The codicil indicates that the testator was not content with
this sanction for the fidelity of the negroes, and its main de-
sign seems to be to secure their services to his wife for her

life, and then to have them liberated. The codicil is obviously written with less professional skill, but we think it developes the intent of its execution. It revokes in explicit terms that portion of the will "which manumitted his servants as they severally arrive at the age of forty;" and this manifestly because it opposed his wish, which he, in the same sentence, proceeded to declare, by adding that he "does now give and devise all his said servants to his wife, for and during her natural life, and after her death then said servants to be free." The will carefully excepts the negroes from the other property whenever it is spoken of as passing beyond his wife and children, if any. All the interest in the negroes which is bequeathed at all is, by the will, given to the wife and children, and by the codicil to the wife alone, and in every instance where other legatees are necessarily named they are expressly excepted as not to be included in the bequest. With the evidence furnished by these facts it would seem difficult to suppose the clause in the codicil, for the punishment of fugitive servants, designed for the benefit of those other legatees. It is however contended that a more general intent of the testator will be defeated by any other interpretation. But we do not perceive that the least violence is done to any such general intent. If indeed there be assumed a general intent to give *all* the property after his wife's death to the other legatees, that would be defeated; but this is assuming the precise matter of controversy. We regard the leading intent of the instrument to be, that his wife should enjoy all his estate for her life, and that after her death the other legatees should enjoy it all except the negroes, and this will not be deranged or defeated with regard to any thing else except the particular specific article of property which is to be disposed of according to specific directions. It is no objection to a bequest or disposition of one item of property, that the testator designed all the rest of his estate to go in a different direction. It is only where, by gratifying a particular intent as to the part, you defeat a more general and more important disposition of other parts, that the particular or minor intent must yield. Where both

may be gratified there is no conflict, and consequently no necessity to yield either.

Various parts of the will, we think, indicate a particular intent to confine to *Mrs. Jones* the whole benefit which, by the will, is disposed of, either for the services of the negroes or the proceeds of their sale. By giving effect to this intent we do not disturb any purpose of the will to give to the wife a life estate in every thing else than the fugitive slaves, and to the other legatees the whole personal estate bequeathed to them after the wife's death.

It has been strongly urged that the bequest in relation to the negroes is to be regarded as a legacy, and that the forfeiture of freedom and sale defeats its operation and causes it to lapse and fall into the residuum of the estate, and then pass, with other property, to the trustees.

We cannot so regard it. The idea of a lapsed legacy can only be connected with some thing or object which, failing by some cause to reach the legatee, is received by some other person, generally the residuary legatee, if there be one. What is the object or thing in this case? Not the freedom of the servants, because that cannot pass to a residuary legatee; nor the services of the servants, because they were never bequeathed to a specific legatee who is not capable of taking. The fugitive negro was to be sold, and the immediate contest is, to whom the proceeds belong. If these proceeds can be regarded as a lapsed legacy it must be in consequence of the failure of a previous bequest of them. But that previous bequest is the precise matter of inquiry, and if ascertained, determines the difficulty, not by reason of its being a case of lapsed legacy, but because, finding the first legatee, we find one capable of taking. Again, we cannot regard the residuary clause relied on as capable of passing any interest in these fugitive slaves, even if it could be considered as a case of lapse legacy, inasmuch as the will has so carefully and repeatedly excluded the negroes from the residuum, which he designed to pass to his collateral relations, by saying, in so many words, in not less than four different instances, when referring to his personal estate, "except my slaves."

Being of opinion, for these reasons, that the whole interest in the negroes sold was given to the appellant, it is quite un necessary to examine the various other points raised in the argument. Let the judgment be reversed, and judgment be entered for appellant for costs.

JUDGMENT REVERSED.

ARCHER, J., dissented.