## EVELYN H. JOYNES ET AL. *vs.* COLUMBUS J. HAMILTON ET AL., EXECUTORS.

*Devise of Real Estate Sold by Testator After Making Will—Ademption—Construction of a Will and Codicil.*

A testator devised a certain lot of ground to his two granddaughters E. and J. Six years after the execution of this will the testator, in consideration of $500 paid to him, leased said lot of ground for ninety-nine years subject to an annual ground rent of $120 and gave to the lessee the right to redeem the rent for $2,000. The following year the testator made a codicil by which he devised the ground rent to his two said granddaughters for the term of their natural lives. Four years afterwards and one year before testator's death, the lessee of the lot redeemed the rent by paying to the testator the sum of $2,000 and received from him a deed in fee After the death of the testator there were found among his papers a check on his bank for $2,000 duly signed and payable to the order of the said granddaughters, and also a letter signed by him saying: "The enclosed check for $2,000, in case of my

death, is to be paid to E. and J. my grandchildren in lieu of the ground rent of $120 on lot on F. st. in my will 'which has been redeemed." *Held*, that the conveyance of the ground rent by the testator in his life time was not an ademption of the devise thereof to the granddaughters and that they are entitled to the proceeds thereof as identified by the check and letter according to the manifest intention of the testator.

*Held*, further, that the granddaughters are not entitled to the five hundred dollars received by the testator for the lease, since the codicil operates as a revocation of the devise of the whole lot made in the will.

Appeal from Circuit Court No. 2, of Baltimore City (DOBLER, J.)

The cause was argued before MCSHERRY, C. J., FOWLER, BRISCOE, PAGE, PEARCE, SCHMUCKER and JONES, JJ.

*W. Burns Trundle*, for the appellants.

1. The part of the testator's property, of which the appellants, his granddaughters, by the eighth clause of the will, are to have the benefit is the Franklin street lot. But they are not to have the lot itself. The direction to the executors is peremptory, to "*sell or lease* the same and deposit the *net proceeds* in bank or invest the *same* for the *benefit* of my said grandchildren, Evelyn and Julia Joynes." Where a man directs land to be sold and converted into money, the land by the will itself is so converted, and is considered in equity as personal estate. *Hurtt* v. *Fisher*, 1 H. & G. 88, 96; *Smithers* v. *Hooper*, 23 Md. 273, 285; *Reiff* v. *Strite*, 54 Md. 301; *Small* v. *Marburg*, 77 Md. 18.

If then the testator had died seized of this lot, while the legal title would have vested in the appellants until a sale should be made, yet they would have taken their bequest "in the character which the testator, by directing the conversion, has impressed upon it." *Reiff* v. *Strite*, 54 Md. 301.

The executors are required not only to convert the lot into money, but to put the "net proceeds," together with the $1,000, at interest for the benefit of the appellants, until they reach the age of 18. They both being now above the age of eighteen, this legacy, if unchanged by the codicil as to *any part* of it, is as to such part now vested in them absolutely.

*Lemonnier* v. *Godfroid*, 6 H. & J. 472, 476; *Bentz* v. *Maryland Bible Society*, 86 Md. 102, 113.

If one of them died under 18, "the survivor to have all" —All what? All said fund, consisting of the "net proceeds," plus the $1,000. If both died under 18, not the land, but "the *said sum or sums of money* is to be equally divided among my children, living at the time of said death if such should occur." Argument cannot make it any plainer, that the substance of the gift is a pecuniary legacy of the proceeds.

"*Net proceeds.*" The term proceeds is equivocal and may be used in the sense of "income" or "profits," or it may be used in its commercial sense, a sum of money resulting from the sale or conversion of a thing into money. Obviously, it is here used in the latter sense; the contingent limitation is of "*the said sum or sums of money.*" A permanent lease would yield *income* only, not a sum or sums of money as capital. A redeemable lease might facilitate a sale, and would at the option of the lessee, exercising the right of redemption, yield a sum of money as part of the purchase price. The lease here referred to was to be ancillary to a sale. In the contingent limitation over, not a reversion was to be divided, but said *sum or sums of money*,

2. The transaction of 28th July, 1896, between the testator and the church was, in effect, a *sale* of the Franklin street lot. On that day, the testator, after having previously made his will, entered into a contract with the church, whereby he covenanted, in consideration of the sum of $500 then to him paid, and the payment of the annual rent of $120, to lease to the church said lot, for ninety-nine years, renewable forever, with the right to the lessee to extinguish the said rent on payment of $2,000 *at any time* to said William Hamilton, his heirs or assigns.

This precise point was decided in *Bosley* v. *Bosley*, 14 Howard, 390. There the testator specifically devised certain land in Baltimore County in trust, one-half for the benefit of his wife, the other to the children of his brother, Dr. John Bosley. Afterwards he made a codicil to his will whereby he

gave to his wife his pew in St. Paul's Church, and *all his other property*, *real* or *personal*, and *all money* in bank belonging to him at his death.　Later he entered into a coutract with Horatio G. Armstrong, whereby in consideration of $2,000 and $210 yearly ground rent to be paid semi-annually, he leased the same to him, "with the right to said Armstrong to extinguish the ground rent upon payment of $3,500 *at any time* to said James Bosley, his heirs and assigns."　The Court held that this was "a sale and an agreement to convey his whole interest in the land.　The opposite construction *"would, however, make the revocation depend upon the will of a stranger, and not upon that of the testator."* That by the residuary clause of the codicil he gave to his wife all his real as well as personal property, not otherwise disposed of, and that this language was broad enough to embrace the interest in question, although in contemplation of law it belongs to the realty. (p. 397).　That upon the *intention* to be gathered from the will and codicil, the wife was entitled to this interest.　The testator's remaining interest in this property was *money*, not land, and passed to the wife under the codicil.　(p. 398.)

This case is distinguished in *Packard* v. *Corp, &c.*, 77 Md. 250.　In that case, there was a right of redemption after ten years, and *within one year thereafter*, while in Bosley's case the lessee had the right to redeem *at any time*.　It was "a sale and an agreement to convey the whole interest."

It follows, that when that contract was completed, the testator had sold his lot for $2,500, of which he had $500 in hand paid, which sum he deposited in The Savings Bank of Baltimore, and an investment of the balance of the purchase-money of $2,000 at 6 per cent upon the security of the lot itself; in legal contemplation, money, not land.

3. This sale did not revoke the eighth clause of the will. The testator himself, having the opportunity, simply anticipated the duty he had imposed upon the executors.　It is settled, that when a testator gives land, with a positive direction to sell, and gives to the legatee the proceeds of sale; and sells the land himself, thus converting it into proceeds, such

proceeds will, so far as they can be identified, pass to the leg-
atee under the will.   1 *Am. & Eng. Ency.* (2 ed.), p. 624.

In *Miller's Executor* v. *Melone*, 109 Kentucky, 133, it was
held that a will devising land to the executor in trust to sell
the same and divide the proceeds among certain persons, ope-
rated merely as a bequest of the proceeds of the land, and that
a sale by the testator in his life time was not an ademption of
the legacy.

In *Nooe* v. *Vannoy*, 59 N. C. 185, the will read : "I further
give to my children, by a former marriage, the proceeds of the
sale of my town property in the town of Wilkesboro, or so
much thereof as is herein specified, to wit, to my son, Joel
Alfred, $200, &c., in all $905, all of which legacies are charge-
able on my town property and no other."

After making the will, the testator sold and conveyed the
lot to John Nooe for $1,300, for which he received the cash
and invested it in bonds and notes.   The plaintiff married S.
M. Vannoy, one of the children of the second marriage.   He
and his wife and W. W. Vannoy, a son by the second mar-
riage of the testator, filed their bill, in which they claimed that
all of the above legacies to Joel Alfred and the other children
by the first marriage, were adeemed, by the sale of the lot by
the testator himself, and that the money realized by the sale
was distributable among the next of kin.   The defendants de-
nied ademption."   The Court said :   "But it is unusual for a
father to adeem, in this manner, legacies given to children and
exclude them from his contemplated bounty, when there has
been no change of circumstances; and for this reason, the
Court is slow to adopt the conclusion that there is an ademp-
tion, and will seek, anxiously, for some mode of explanation."

The Court rely on the fact that the testator gives *"the pro-
ceeds of the sale"* of his town property or so much thereof as
is herein specified, viz, "$200 to Joel Alfred, &c., in all $905."
That the will speaks as of the death of the testator *as if ex-
ecuted immediately before his death.*

"As the *proceeds of the sale* of the property is given, it fol-
lows that if such part thereof as is specified, can be traced out

and identified, at the time of the death of the testator, the legacy will take effect, and there will be no ademption, or, only a partial one." *Frick* v. *Frick*, 82 Md. 218, 227.

This proposition is equally true, whether the term specific, or general or demonstrative, be predicated of the gift. *Gardner* v. *Printup*, 2 Barb. 83, 88; *Pierrepont* v. *Edwards*, 25 N. Y. 128, 131; *Doughty* v. *Stillwell*, 1 Bradford (N. Y.), 300, 307; *Ogle* v. *Cook*, 2 Vesey, Jr., 686.

The $500 then received by the vendor, as part of the proceeds of sale, and by him deposited in the Savings Bank of Baltimore, now belong to the appellants, unless the eighth clause has been revoked *in toto* by the codicil. The sum was so deposited by the testator; there is nothing in the case to show that any part of it was ever drawn out; at the death of the testator there was, in that savings bank to his credit, $2,438.02. Said sum of $500, so by him deposited on 28th July, 1896, is presumed to have remained there to his credit until his death. "When the existence of a person, a personal relation, or a *state of things*, is once established by proof, the law presumes that the person, relation, or state of things continues to exist as before, until the contrary is shown, or until a different presumption is raised from the nature of the subject in question." 1 *Greenleaf on Ev.*, s. 41; *Hammond's Lessee* v. *Inloes*, 4 Md. 172; *Lazurus* v. *Phelps*, 156 U. S. 205; *Reynolds on Evidence*, 118.

4. As to the $500, part of the proceeds of sale of the lot, received by the testator and put in the savings bank, to which the codicil makes no reference.

Here, there is no express revocation of the eighth clause; Columbus J. Hamilton is released from paying the $1,000 to the appellants. In lieu of that, they are given the income of a ground rent on the York road for life, with contingent limi‑tations over. The testator refers to so much of the proceeds of sale of the Franklin street lot as is in the form of a redeemable ground rent; imposes the same limitations upon this fund as to income and principal, but makes no reference to the cash part of the proceeds of sale of said lot received by him at the

time of the sale and deposited in the savings bank.   Where,
then, is the inconsistency between the will and the codicil, as
to *that part* of the proceeds of sale?   Can it be argued that,
in referring to *part* of the proceeds of sale, that part so in-
vested, he meant to include the *whole?*   He does not say so.
The limitation of "their portion" must be referred, as it logic-
ally refers, to the subject-matter of the codicil;  only by strain-
ing the connection, can it be held to embrace the $500 already
given to the granddaughters absolutely in the eighth clause,
under the words "net proceeds."   It cannot be supposed that
the testator had forgotten that he had sold the lot for $2,500;
that he had received $500 in cash;  that he had put it in the
savings bank;  that it was still there;  that it would pass to the
appellants under the designation of proceeds, if he had in-
tended to change his will in that respect, it is fair to presume
he would have done it;  not having done it, the eighth clause,
to that extent, is operative, and vests in the appellants this
$500 absolutely.

5. As to the effect of the payment of the balance of pur-
chase-money by the church to the testator on 22nd October,
1901, and release of the rent.   The argument on the other
side is, that the gift of the income of this fund to the appel-
lants is conditional upon its remaining in the precise form in
which it was when the codicil was made.   This we deny; and
say that the intention of the testator was, and the true con-
struction is, to give them the benefit of that income, although
the precise form of the investment might be changed by the
act of the church in discharging the obligation for the balance
of the purchase-money of the lot.

It is true the testator speaks of this investment as a "ground
rent," which, strictly speaking, it was not, as shown in *Bosley*
.v. *Bosley, supra.*   Though a ground rent in form, it was, in
substance, an investment of $2,000 of the unpaid purchase-
money.   A thing is what is, not what it may be called.
Whether he referred to it as an investment, or a fund at in-
terest, or a ground rent, did not change its essential character,
vis, $2,000 of the proceeds of sale of the land at interest, se-

cured on the land.   *Reilly* v. *Union Prot. Infirmary*, 87 Md. 667, 668; *Woman's Foreign Miss. Society* v. *Mitchell*, 93 Md. 204; *Littig* v. *Hance*, 81 Md. 431; *Wright* v. *Marshall*, 72 Ill. 584.

The subject-matter of the eighth clause, and of this part of the codicil, "They are to have, &c.," are the same; with the exception that the eighth clause embraces the *whole* of the net proceeds, the codicil only *four-fifths* thereof; with a different limitation as to said four-fifths.   In this limitation the possible offspring of the granddaughters are brought within the purview of the testator's bounty, and provided for.   If none, then over.

Intermediate between the making of the will and the codicil, he had himself wrought *a change* in the Franklin street lot; had sold it and had received part of the purchase-money with an investment of the balance.   As this change was not to deprive the appellants of the benefit of the income of this fund arising from said lot, how can it be claimed that a *further change*, brought about, not by the testator, but by the church, shows that he intended his bounty to be conditional upon the investment remaining unchanged?   Had the codicil not been made, it might have been argued, that the gift of the lot was specific and its sale an ademption or revocation.   But that contention is cut off by the codicil.   The appellants are still to have the income of the invested part of the proceeds of sale, but for life only with a contingent limitation of the *corpus* to their issue, if any; if none, over, to his children.   What rational purpose can be imputed to the testator to make his bounty, as expressed in the codicil, operative or inoperative, effective or void, at the option of a third party?

It was settled by a long line of English cases prior to the separation of Maryland from the mother country, that the true interpretation of every will, whether the form of the particular bequest was in its nature specific or demonstrative or pecuniary, depends upon the intention of the testator; that an intent to make a gift conditional, and to disappoint the legatee, is not to be inferred from a change in the form of the gift, brought about by a third party.   It was considered illogical and unrea-

sonable, as it obviously is, to make the testator's bounty con-tingent upon the act of a stranger and not upon the act of the testator himself. *Orme* v. *Smith* (1711), 2 Vernon, 681, Eq. Ca. Ab. 302; *Earl of Thomond* v. *Earl of Suffolk* (1718), 1 P. Wms. 464; *Crockett* v. *Crockett* (1723), 2 P. Wms. 164; *Rider* v. *Wager* (1725), 2 P. Wms. 330; *Ford* v. *Fleming* (1728), 2 P. Wms. 469; *Ashton* v. *Ashton* (1735), 3 P. Wms. 386; *Partridge* v. *Partridge* (1736), Cas. Temp Talbot, 228; *Bronsdon* v. *Winter* (1745), Ambler, 57, 59; *Backwell* v. *Child* (1755), Ambler, 260, 262; *Hambting* v. *Lister* (1761), Ambler, 401, 402.

To this rule LORD THURLOW, in four cases (relied on by the appellees below), *Ashburner* v. *McGuire*, 2 Bro. Ch. Rep. 108; *Baldrick* v. *Stevens*, 3 Bro. C. R. 431; *Stailey* v. *Potter*, 2 Cox, 180, and *Humphries* v. *Humphries*, 2 Cox, 184, introduced an exception, but that exception, it is submitted, is no part of the law of Maryland. That point is set at rest by JUDGE BEN-NING in *Beall, Exr.*, v. *Blake et al.*, 16 Georgia, 119.

Nor have the English Courts consistently followed LORD THURLOW. In *Coleman* v. *Coleman*, 2 Vesey, Jr., 639, decided in 1795, the case was : the testator by his will, reciting that he was possessed of a bill of exchange drawn in his favor upon the East India Company for 1500£ bearing interest at 3 per cent, gave to his wife the *interest of said bill for life*, and at her death directed that the bill should be sold and the money arising thereby be equally divided among several nephews and nieces, share and share alike. After making the will, the tes-tator received from the East India Company the sum of 1500£ due on the said bill, and lent it in two sums on personal se-curity, and one sum, 1400£, of the debt was paid to his executrix, the other 100£ was lost by the insolvency of the debtor. *Held*, no ademption of the legacy.

It was urged for the plaintiffs, the nephews and nieces, leg atees, that it was impossible to infer an intention to adeem; for the bill was paid in the usual course in which the company paid these bills in rotation. For the defendant it was urged that it was a specific legacy and adeemed. That the distinc-

tinction between a voluntary and compulsory payment was exploded. Citing *Ashburner* v. *McGuire*, 2 Bro. C. C. 108; *Atty.-Genl.* v. *Parker*, Ambler, 566.

*Jenkins* v. *Jones*, L. R. 2 Eq. 323, is apposite.  The testator, Edward Jones, by his will made 1st January, 1855, after disposing of his freehold and leasehold property, proceeded as follows:   "I give and bequeath to my son William Jones, the whole of my farming stock, animate and inanimate, including the whole of my implements of husbandry, which shall be in my possession at my decease."   ·

On 15th January, 1858, he had a fit of apoplexy and from that day to his death, which occurred in February, 1860, he was of unsound mind.   William Jones, the son, and Mary, his mother, gave up the farm, of which the testator was a yearly tenant, sold the stock and farming implements at auction and deposited in bank the proceeds, 560£. 9s. 7d.   The question was, whether or not this sale was an ademption of the specific legacy of the stock and farming implements, and whether or not the legatee, William Jones, was entitled to the proceeds of sale.

It was urged for the plaintiffs, some of the next of kin, that the testator gave to his son specific chattels, which at his death were not in existence, and there was nothing to which the language of the bequest could apply; citing among other cases *Ashburner* v. *McGuire*, 2 Bro. C. C. 108.   It was decided that there was no ademption, and that the specific legatee was entitled to the proceeds of sale of the stock and implements.   "The *intention* of the testator in this case is clear. The conversion of the stock was *inevitable*, and I cannot hold that the specific legatee's claim to the proceeds ought to be rejected."

This decision applies here.   After making the sale and redeemable lease of the Franklin street lot—redeemable at any time at the option of the church—it was not in the power of the testator to refuse to accept the balance of the purchase-money, $2,000, and decline to release and discharge the rent. The church could and would have compelled him to do it.   ·

The case stated shows that the church paid the money, $2,000, of *its own volition;* it was *not of his volition* that the rent was adeemed. Unless the church could revoke Mr. Hamilton's will of "its own volition," the proceeds, $2,000, so carefully deposited on the same day in the Fidelity and Deposit Company, and identified by the testator, must be held to pass to the grandchildren, the appellants, subject to the same limitations expressed in the codicil with reference to a redeemable rent. See also *Fowler* v. *Willoughby*, 2 Sim. & St. 354; *Mann* v. *Copeland*, 2 Madd. 223; *Livesey* v. *Redfern*, 2 Younge & Coll. 90; *Clark* v. *Brown*, 2 Smale & Gif. 524, cited with approval in 81 Md. 432; *Coleville* v. *Middleton*, 3 Beav. Ch. 570; *Morgan* v. *Thomas*, L. R., 6 Ch. Div. 176.

In *Pyle* v. *Pyle* (1895), 1 Ch. 724, the testator by his will, dated in 1886, specifically devised certain freeholds; by a codicil made 10th June, 1890, he confirmed his will. On the same day he granted a lease of the specifically devised property, with an option of purchase to the lessee. After testator's death lessee exercised his option and bought the property. *Held*, the purchase-money belonged to the specific devisee.

Referring to *Emuss* v. *Smith*, 2 DeG. & Sm. 722, it is said: "That was founded on three things—the specific devise in the will, the optional nature of the contract, and the republication of the will by the codicil."

It, therefore, by no means follows, that if this gift is in one sense specific, a change in its form, in the lifetime of the testator, especially when that change is brought about by a fact beyond the control of the testator, shall disappoint the legatees. Unless the Court, upon the whole will and codicil, is forced to the conclusion, that such was the testator's intention; and can find nothing in the will to rebut that unnatural inference such construction will be rejected. This is made very plain by the American authorities.

*Schupp* v. *Gaylord*, 103 Pa. St. 319, 325, 330. Legacy of $500 a year to testator's wife out of rents accruing under and from the lease of coal to Wilkesbarre Coal and Iron Co. The original lease was declared forfeited by decree of Court.

*Held*, that this did not extinguish the annuity. See also *Welch's Appeal*, 28 Pa. St. 363; *Corbin* v. *Mills*, 19 Grattan, 438; *Johnson* v. *Conover*, 54 N. J. Eq. 333; *Giddings* v. *Seward and wife*, 16 N. Y. 365; *In re Bradley's Will*, 73 Vt. 258; *Lake* v. *Copeland*, 82 Tex. 468; *Tichenor* v. *Tichenor*, 41 N. J. Eq. 42.

The clear intention of the testator, from the express provisions of the will and codicil, is that his living children are to have no part of the proceeds of the Franklin street lot, in the lifetime of his granddaughters; any construction which *violates this intention* and gives the money to the living children *now*, must be erroneous. *Frick* v. *Frick*, 82 Md. 228. In ·point. Where a testator devises land, the legal title to which is in him, but which he has sold and given the purchaser a bond for a deed therefor, the purchase-money when paid by the purchaser will belong to the devisee. *Wright* v. ·*Marshall*, 72 Ill. 584; *Woods v. Moore*, 4 Sanford, N. Y. 579, cited with approval in 82 Md. 227.

6. The letter and check of 22nd October, 1901, are part of· the case stated—no reservation of exception to their admissibility was made. If admissible for one purpose, they must be admitted for all legitimate purposes. The precise question was decided in *Boys* v. *Williams*, 2 Russ. & Mylne, 689. A testatrix by codicil gave to A. & M. "50£ each of bank long annuities now standing in my name." At the date of the codicil and at her death, she possessed long annuities ·sufficient to answer this bequest specifically, but not also to satisfy certain legacies ·charged by the other testamentary papers upon the same stock. Evidence as to the state and value of the testatrix's property in the funds at those respective times was admitted, and on the effect of that evidence and the language of the testamentary papers, taken together, the bequests to A. & M. were held not to be specific, but pecuniary. See also, *Boyes* v. *Cook*, L. R., 14 Ch. D. 56; *Nash* v. *Towne*, 5 Wall. 689; *Littig* v. *Hance*, 81 Md. 425. "Evidence of the state of the testator's property may be resorted to, in order to determine whether a bequest is specific or pecuniary." 2 *Williams on Executors*, 7 Am. ed., 448–1029.·

7. Upon the will and codicil, giving effect to the intention of the testatator, the appellants are entitled to the $500 absolutely; and to have the $2,000 invested by the executors for their benefit for life, with the same limitations as are expressed in the codicil.

*Edwin J. Griffin* and *S. John Lion,* for the appellees.

The will was revoked by the codicil as regards the specific devise of the Franklin street lot mentioned therein, because the terms of the codicil are clearly inconsistent with the will: they show a *change* of *purpose* on the part of the testator as to how the Misses Joynes should take and hold what they were to receive from him; and he, having in the meantime leased the lot on Franklin street, gives them a ground rent instead of the fee-simple lot mentioned in the will, and gives it to them for life only.    To all intents and purposes it is a new will as to the first devise.    The two can not stand together.    A will showing change of purpose and different disposition of property, revokes the former one.    *Larabie case,* 2 Williams (Vt.), 274; 1 *Jarman on Wills,* 156; *Simmons case,* 26 Barbour, 68; *Brant case,* 8 Cowen, 56; *Derby case,* 4 R. I. 414, 427.

And this is true even if devise or legacy mentioned in codicil fails.    2 *American Leading cases* (5 ed.), notes, bottom of page 504, *Harristan* v. *Harristan,* 30 Miss. 276; *Read* v. *Manning,* 30 Miss. 308; *Price* v. *Maxwell,* 4 Casey, 39.

In this latter case a charitable devise failed.    The former will was still held to be absolutely revoked, as original design had been abandoned.    And this Court in *Colvin* v. *Warford,* 20 Md. 394, etc., said: "It is settled that a will, valid in all its essential parts, but inoperative from other circumstances, may, nevertheless, have the effect of revoking a previous will." *Roper* v. *Radcliff,* 10 Mod. 233; *Beard* v. *Beard,* 3 Atk. 72.

The codicil creates a specific devise of the ground rent. There is no doubt about this.    The counsel for the appellants admitted this in his argument below.    A devise of a rent charge out of a term is as much a specific devise as if it had been of the term itself.    *Long* v. *Short,* 1 P. Wms. 403

Rent and reversion go together; and, that the thing given—the rent itself—may pass to the devisee, the reversion must remain in the testator.

The testator having disposed of the ground rent in his life time, no matter for what reason, or from what cause, it is not there for the appellants to take under the codicil. As this Court said in *Kunkel* v. *MacGill,* in 56 Md. 123, "if the legacy is to be considered specific, then in the event of the testator's parting with the thing or property bequeathed, or, if, *from any cause*, it should be lost or destroyed, the legacy fails."

Sale is a revocation. *Hattersly* v. *Bissett,* 51 N. J. Eq. 597, quoting LORD HARDWICKE in *Sparrow* v. *Hardcastle,* 7 T. R. 416, note. "The estate is gone, and the will has lost the subject of its operation," as in this case. *Howes* v. *Humprey,* 9 Pick. 391; *Clark* v. *Packard,* 9 Gray, 417; *State* v. *Robinson,* 57 Md. 502; *Hinkley T. L. S.,* 401–3.

Sale operates as an ademption in case of a legacy, to render the will inoperative so far as the specific devise is concerned. *Cozzens* v. *Jamison,* 12 Mo. Appeal Reports, 457. When a testator devises his real estate and subsequently conveys it to a person other than the devisee, the devise thereby becomes impliedly revoked. *Emory* v. *Union, etc.,* 79 Me. 334.

Where testator devises land which he is under obligation to convey to another, the devisee on loss of the devise cannot call on the heirs to make it good. *Hunter* v. *Mills* (S. C.), 6 S. E. 907.

The check and other paper are certainly void and of no effect. See *Chase & Postill* v. *Stockett, &c.,* 72 Md. p. 244, where the Court adopts an opinion of JUDGE MILLER, who went into a similar question very exhaustively. "The law has very wisely thrown around the execution of wills and testamentary papers certain solemnities, the observance of which is necessary to their validity." *Saylor* v. *Plaine,* 31 Md. 158.

The appellants will probably contend that the will was not revoked by the codicil. If the Court should take this view, even then the appellants are not entitled to any funds arising

from the redemption or sale of the ground rent, or lease of the lot because the devise of the lot in the will, to be sold or leased, is a *specific devise* (and not a demonstrative legacy) in every sense of the word, and the testator not owning same at the time of his death, the devise fails.    Every devise of land, even in a residue is specific.    *Heusman* v. *Fryer,* 3 L. R. Ch. App. 420; *Lancefield* v. *Iggholden,* 10 L. R. Ch. App. 136.   A bequest or devise of real estate for life with remainder over is always to be treated as a specific devise.    *Healy* v. *Toppen,* 45 N. H. 243.    A devise upon trust to sell and divide among certain persons make them specific legatees.    *Page* v. *Leaping-well,* 18 Vesey, 463.

A gift to one of a sum of money, part of the proceeds of real estate directed to be sold   *   *   *   is substantially a gift of the estate and not a gift of legacies with a collateral charge on them.    *Newbold* v. *Roadnight,* 1 R. & M. 677; *Crosbie* v. *McDanal,* 4 Ves. 610; *Izard* v. *Hurst,* 2 Freeman, 224; *Hancock* v. *Abbey,* 11 Ves. 179.

Legacies out of issues of real estate by sale or otherwise the same as devise of part of real estate, and are specific.    *Hunt* v. *Williams,* 26 N. E. 177; *Redfield on Wills,* pt. 2, p. 472, *Bonnell* v. *Bonnell,* 20 Atl. Rep. 895; *Arnold* v. *Arnold,* 1 Brown's Ch. C. 401.

If the will gives a legacy, still it is definite, though unascertained amount to be produced in a definite and specific manner by specific persons.    Is the fund in bank that which testator gave?   He did not intend to give proceeds from any sale he might make.    The codicil itself shows this, for it gives the ground rent *only,* when he received *$500 besides.*

This act alone shows he did not intend will to operate upon any sale or disposition he might make, and this is conclusively shown by his attempt to pass or give money by check and letter.    His attempt to leave his granddaughters the ground rent having been defeated by his own acts or by other circumstances, the Court cannot make the change.    *Devecmon* v. *Kuykendall,* 89 Md. 28.

The appellants also go upon the theory that the Court

should use the check and paper to show what the testator meant by his will.  But is there anything in the will or codicil with reference to this Franklin street lot which needs explaining?  The letter and check, besides, show that Mr. Hamilton *at one time* intended to give them after his death $2,000, and not $2,500, which he finally received out of the Franklin street lot.  So the check and paper do not show what he intended to do *by the will,* and should, therefore, be excluded from consideration entirely.  "The question is not what the testator meant as distinguished from what his words express, but simply what is the meaning of his words."  *Chase* v. *Stockett, &c.,* 72 Md. 242.  In *Zimmerman* v. *Hafer,* 81 Md. 357, this Court held that the testator's intention must be taken from will and not from deed *referred to therein.*  When the language is plain and unambiguous, such language must govern.  *Walston* v. *White,* 5 Md. 297.  Intention must be taken from face of will.  *Hutchins* v. *Pearce,* 80 Md. 434.

BRISCOE, J., delivered the opinion of the Court.

This is a special case stated under the 47th general equity rule, for the construction of the last will and testament and codicil thereto, of William Hamilton, late of Baltimore City, deceased.

The facts to enable the Court to decide the questions submitted and raised on the record, briefly stated, are these.

Mr. Hamilton departed this life on the 15th day of November, 1902, owning real and personal estate of the aggegate value of fifty thousand dollars, and leaving a last will and testament dated the second day of July, 1890.  A codicil was made to the will, and bears date, the 16th day of March, 1897.  The will and the codicil were duly admitted to probate in the Orphans' Court of Baltimore City, and the appellees qualified, as the executors, named therein.

By the eighth clause of the will and the one here in controversy he provides as follows : "I give to my two grandchildren, the children of my deceased daughter, Mary Julia, wife of Tulley A. Joynes, Jr., all that lot in fee fronting about fifty-nine feet on Franklin street near Arlington avenue and ad-

joining the lot I gave to my daughter, Mary Julia, and that my executors shall sell or lease the same and deposit the net proceeds in bank or invest the same for the benefit of my said grandchildren, Evelyn and Julia Joynes, and also the sum of one thousand dollars the interest to be paid from the time of my death until they or either of them are eighteen years old and in case of the death of either the survivor to have all and in case of the death of both before they are of the age of eighteen the said sum or sums of money is to be equally divided among my children living at the time of said death if such should occur.''

The testator left surviving him seven children and three grandchildren. The appellants are the children of a deceased daughter and are the granddaughters named in the eighth clause of the will and are now above the age of eighteen years.

At the date of the execution of the will, the lot which the testator owned on Franklin street, and which he devised by the eighth clause of the will to the appellants, was improved by a small chapel and this was rented to the Concordia Evangelical Lutheran Congregation of Baltimore at a yearly rental of $80.00.

On the 28th of July, 1896, and six years after the date of the will, the testator, in consideration of $500 paid him, leased this lot to the church for 99 years, subject to a ground rent of $120 and gave the church the right in the lease to redeem the rent and purchase the lot at any time for the sum of $2,000.

Subsequently, on the 16th day of March, 1897, Mr. Hamliton executed a codicil to his will, which among other things provides as follows: I release my son, Cornelius J. Hamilton, in paying to my two granddaughters, Evelyn and Julia Joynes, the children of my deceased daughter, Mary Julia, the sum of one thousand dollars and give to them the ground rent of eighty-two 50-100 dollars on the lot fronting sixteen feet six inches on the west side of York road corner of Barrackman's lane by one hundred and twenty feet deep, they are

to have the ground rent created on the lot on Franklin street adjoining the lot given or deeded to my daughter, Mary Julia, the rent amounts to one hundred and twenty dollars during their natural life and in case neither of them should leave no children then their portion to go to my children living at their death in equal shares.

Afterwards, on the 22nd day of October, 1901, the church redeemed the ground rent reserved in the lease, for the sum of $2,000 and received a deed from the testator, for the Franklin street lot. And it appears from the testator's bank-book with the Fidelity and Deposit Company of Baltimore, that the sum of $2,000 was deposited by him in the bank on the same day.

And it further appears, that after the decease of the testator, there was found in a pass-book of the Savings Bank of Baltimore, which belonged to him, the following check and letter in his handwriting :

*Check.*

No."                                   Baltimore      .   190
          Fidelity and Deposit Company of Maryland
          Pay to the order of Evelyn and Julia Joynes
Two thousand . . . . . . . . . .  . . . . . . . .  . . . . . . . . . . dollars
$2,000.                    (Signed)      Wm. Hamilton.
                    *Letter.*

                                        Baltimore, October, 1901.
     The enclosed check for two thousand dollars, in case of my death is to be paid to Evelyn and Julia Joynes, my grandchildren, the children of Tulley A. Joynes, in lieu for the ground rent of one hundred and twenty dollars on lot on Franklin street in my will, which has been redeemed by the church.
     (Signed)                              Wm. Hamilton.

     Upon the case as thus stated the Circuit Court of Baltimore City held that under a proper construction of the will and codicil of the testator, the appellants were not entitled to any interest in or to any part of the proceeds of sale of the Franklin street lot mentioned in the eighth clause of the will. And an appeal is taken from this decree.

     It will be thus seen, that there are two questions presented for our determination and they relate, first, to the disposition of the $500, a part of the proceeds of the Franklin street lot,

received by the testator, at the date of the lease to the church of the lot, in dispute, and secondly, as to the effect of the devise of the ground rent created on the lot on Franklin street, and specially devised by the testator in the codicil to his will, to the appellants, and subsequently redeemed by the church.

As to the first question, but little need be said, because we think it is quite clear that the testator in the codicil, dated the 16th day of March, 1897, revoked the previous devise of the lot, as contained in the eighth clause of the will, and gave in lieu thereof the ground rent created thereon. The language of the codicil is, they are to have the ground rent created on the lot on Franklin street adjoining the lot given or deeded to my daughter, Mary Julia, the rent amounts to one hundred and twenty dollars, during their natural life, and in case neither of them should leave children then their portion to go to my children living at their death in equal shares.

The testator executed this codicil about eight years after the lease to the church, creating the redeemable ground rent, which was subsequently redeemed at $2,000, and after he had received the $500, a part of the consideration for the lease. The codicil gives the ground rent only and not the $500, which he had received from the lessee. There is nothing in the will or codicil to indicate a contrary intention and as the will was revoked by the codicil to this extent, the devise must fail as to this part of the proceeds of the Franklin street lot, given by the eighth clause of the will to the appellants. *Jones* v. *Earle*, 1 Gill, 395; *Boyle* v. *Parker*, 3 Md. Chy. 43; *Johns Hopkins* v. *Pinckney*, 55 Md. 380.

The remaining question in the case involves a construction of the will and codicil as to the effect of the devise of the redeemable ground rent created on the lot, and the converted proceeds of $2,000, subsequently deposited by the testator in the bank.

Now it is a cardinal rule in the construction of wills, that the intention of the testator is to be carried into effect, unless opposed by some principle of positive law.

Looking to the will and codicil, and the testimony in the

case, we are satisfied that the testator did intend to give to the two granddaughters the converted proceeds of the ground rent on Franklin street, and that any other construction of the will would clearly defeat this intention.

In the first place it appears from the eighth clause of the will that he gave them the lot itself with directions to his executors to sell or lease the lot and deposit the net proceeds in bank or invest the same for their benefit until they arrived at the age of eighteen.

By the codicil, dated on the 16th day of March, 1897, he devised, among other things, the ground rent, which had been created on this lot.

Subsequently, after the rent had been redeemed, he drew a check on the bank where the fund had been deposited, payable to the appellants and accompanied it with a letter, dated October, 1901, to the effect that the enclosed check for two thousand dollars, in case of my death is to be paid to Evelyn and Julia Joynes, my grandchildren, in lieu for the ground rent of one hundred and twenty dollars on lot on Franklin street in my will, which has been redeemed by the church."

But it is contended, upon the part of the appellee, that as the church redeemed the ground rent in the lifetime of the testator it was not there for the appellants to take under the codicil, and the devise failed. We cannot agree to the application of this rule of law, to the facts and circumstances of this case.

While it may be conceded that the check, letter and other paper, set out in the record cannot be upheld as testamentary papers or as constituting an enforceable gift, *Saylor* v. *Plaine*, 31 Md. 158, and *Chase* v. *Stockett*, 72 Md. 244, yet they clearly trace out and identify the fund in bank at the time of the death of the testator as the proceeds of the redeemable ground rent, and also show that it was the manifest intention of the testator, that the converted proceeds should pass under the codicil to his will to the appellants.

This being so, there was no ademption of the legacy, and the grandchildren take the fund of $2,000, subject to the limitations expressed in the codicil. *Littig* v. *Hance*, 81 Md. 425;

*Frick* v. *Frick*, 82 Md. 218; *Nooe* v. *Vannoy*, 59 N. C. 185; *Wright* v. *Marshall*, 72 Ill. 584; *Woods* v. *Moore*, 4 Sanford, N. Y. 579.

The intention of the testator obviously, was to provide for the appellants, the grandchildren named in the codicil, and to sustain the appellees contention and the conclusion reached by the Court below in this case, would defeat not only one of the objects of his bounty, but would violate this intention, as expressed in the will and codicil.

For the reasons, we have given, the decree of the Court below will be reversed and the cause remanded, to the end that a decree may be passed in accordance with the views herein expressed.

> *Decree reversed and cause remanded,*
> *the costs to be paid by the executors*
> *out of the estate.*

(Decided February 17th, 1904.)