## THOMAS J. LINDSAY *vs.* MARIE EUGENIE WILSON.

*Holographic Will Made in France Valid to Pass Real Estate in Maryland Under Code, Art. 93, Sec. 327—Construction of a Will Written in French—After Acquired Real Estate.*

Code, Art. 93, sec. 327, provides that every will made out of the State shall be held to be valid in Maryland, if the same be made according to the forms required by the law of the place where the same was made, or by the law of the place where the testator was domiciled when the same was made, or according to the forms required by the law of this State. Under this statute a holographic will made in France, not witnessed, but executed in accordance with the laws of France, by a citizen of Maryland, domiciled in France, is valid to pass real estate in Maryland, although wills executed in Maryland are required to be attested by two witnesses.

By his will, written in French and executed in France, a testator constituted his wife his universal legatee and gave to her all the property of which he could dispose of at his death (tous les biens dont je disposerai à mon décès). *Held,* that since the word biens is used in French jurisprudence to include both real and personal property, and a universal legatee means one who takes all the property of both kinds, that construction is to be given to this will; and the provision of Code, Art. 93, sec. 227, which directs that when a will executed in a foreign country of a testator originally domiciled in Maryland, is admitted to probate it shall be governed by, and construed and interpreted according to the law of Maryland does not require that this will shall be construed as passing only personal property on account of the use of the words biens and légataire.*

---

*Appended to this case as reported in 2 L. R. A. N. S., p. 408, is an elaborate note on conflict of laws as to wills.

When a will gives to the testator's wife absolutely, all the property to which the testator may be entitled at the time of his death, it is effectual to pass real estate acquired by him after the execution of the will, because such was the apparent testamentary intention; and Code, Art. 9, sec. 329, provides that every last will executed in due form of law shall pass all the real estate which the testator had at the time of his death.

Appeal from the Circuit Court No. 2, of Baltimore City (STOCKBRIDGE, J.)

The will referred to in the opinion of the Court is as follows:

Ceci est mon testament.

Je, soussigné Gulian Wilson, appellé aussi Marshall G. Wilson, rentier, demeurant à Saint Lo, Manche, France, Rue Thiers, No. 16, déclare et entends disposer de la maniére suivante de tous les biens dont je disposerai á mon décès. J'institute pour ma legataire universelle Marie Eugenie Tanguy, mon épouse, entendant qu'elle jouisse et dispose en pleine propriété de tout ce que je possederai au moment de mon décès. En cas d'existence d'enfants de notre mariage, ce legs sera réduit a un quart en toute propriété et un quart en usufruit avec dispense de faire emploi des valeurs mobilières et de donner caution. Dans le cas ou mon père et ma mère, ou l'un d'eux, existeraient a mon décès et auraient des droits quelconques a prétendre sur ma succession, j'entends que les droits de ma femme soient aussi étendus que possible en toute propriété, une propriété en usufruit. Toutefois je lègue particulièrement a ma mère ma chaine et montre en argent et je legue a mon père la montre et la chaine en or qui me viennent de mon grand'père pere David S. Wilson, en cas de prédecès de mon père, je legue cette montre et la chaine a mon cousin Melville Wilson, Fait a Saint Lo, Manche, France, le trente avril mil neuf cent un.

                              Gulian Wilson,
                                   Appellé aussi
                                   Marshall G. Wilson.

The cause was argued before McSHERRY, C. J., BRISCOE, PAGE, BOYD, SCHMUCKER, JONES and BURKE, JJ.

*Conway W. Sams*, for the appellant.

*David Fowler* and *George Whitelock*, for the appellee.

The holographic will of Marshall G. Wilson, under which the plaintiff in this case claims title to the property sold to the defendant was written and executed by him on April 30th, 1901, in France while he was domiciled there. James G. Wilson, the father of the testator, died June 1st, 1904. Josephine C. Wilson, the mother of the testator, died March 12th, 1905. On June 3rd, 1905, the testator, a native of Maryland, took passage with the plaintiff, on the steamer St. Louis, at Cherbourg, intending to come to the city of Baltimore; but he died on shipboard the day after the steamer sailed from France.

The will of Marshall G. Wilson was admitted to probate in the Orphans' Court of Baltimore County on June 21st, 1905, but, as we know, and as is said by Mr. Redfield "where the will is in a foreign language, it is, of course, requisite that the probate should contain a translation of the same into English." 3 *Redfield on Wills*, 54.

The translations of the word "biens" we rely upon are supported not only by our witnesses and the express provision of the French Code, but also by JUDGE STORY, one of the most learned writers on the civil law. He says: "Foreign jurists commonly in the term 'biens' include all sorts of property, movable and immovable." Again he says, "We have already had occasion to state that in the civil law the term 'bona' includes all sorts of property, movable and immovable; as the cerresponding word in French does also, citing *Livermore, Dissertation*, p. 81, sec. 106; *Boullenois Obs.* 2, p. 28, and a number of other writers on the civil law; *Story's Conflict of Laws*, pp. 12–13, note 1, also pp. 343, 353, 74 and 75; also note 71, 5 *Cyc.*, 686, where it is said that "real estate is included in the term 'biens' as employed by the civilians and continental jurists."

The use of the word "legatee" in this will cannot be said to raise any presumption that the testator was disposing of personalty alone, for, as far as we have been able to ascertain, in both the civil law generally, and also in the French Code "legacy" and "legatee" are applied respectively to the subject-matter of the gift and to the donee whether real or personal property, or both, are the subject of disposition by will. Nor, indeed, has the word "devise" any magic even in our law, for it is settled by the text-books and many decisions, that it may mean any gift by will, whether it consists of real property or personalty, whichever best accords with the intention of the testator    14 *Cyc.*, 284, "Devise." Notes 29, 36, 43; 18 *A. & E. Encyl.*, p. 710, note 9.

And so also "legatee" will be held to include "devisee," especially when, as in the will in this case, the testator appoints a "legatee" to take all of his property.    18 *A. & E. Encyl.*, p. 821; note and cases cited; *Ford* v. *Ford*, 70 Wisconsin, 45; *Evans* v. *Price*, 118 Ill. 599; *Anonymous*, 1 Pere Williams, p. 267; *Barrington* v. *Siddle*, 2 De Gex, M. & G. 500.    In the course of his opinion the Lord Chancellor (LORD ST. LEONARDS) said there was no magic in the word "devise." "It means a disposition by will." *O'Neal* v. *Ward*, 3 H. & M. 93; *Hoxton* v. *Gardner*, 1 H. & M. 437.

We have not after diligent research been able to find a statute precisely like ours, in every particular, in force in another State; but there are several so nearly resembling it, that there is no substantial difference between our own and them.    In 22 *A. & E. Encyl.*, 1375, 1376, it is said that "in a number of jurisdictions statutes have been passed regulating matters of testamentary disposition in cases otherwise subject to the general rule of private international law.    Some of these statutes are merely declaratory of the general rule."    The author then cites the case of *Penfield* v. *Tower*, 1 N. D. 222, in which it was said that the law of that State adhered to the general rule that the law of the testator's domicile governs wills of personalty, while wills of real property are governed by the *lex situs*. But, adds the author, other jurisdictions "either wholly abro-

gate or materially alter the pre-existing laws," and in note 6 under the head of "Statutes changing the common law," Maryland alone is mentioned, the Act of 1894, ch. 151 (sec. 327, Art. 93) is referred to, and the case of *Olivet* v. *Whitworth*, 82 Md. 276, is cited. The author fails, however, to refer to the statutes of Massachusetts, Connecticut and Wisconsin, which are quite as broad and radical as ours.

The English law (Lord Kingdown's Act), provided how wills of personal property should be executed outside of the United Kingdom, giving a choice among several forms. 1 *Jarman on Wills*, s. p. 7 to 9.

But as regards wills of real estate situated in England they must be executed according to the *lex rei sitae*. 1 *Jarman on Wills*, p. 1.

The statutory law of New York in relation to the execution of wills outside of that State is very much like the English law.

It was held in *Matter of Gains*, 84 Hun., and affirmed in 154 N. Y. 747, that Mrs. Gains' will, not having been executed according to the laws of New York, could, under the provisions of the New York Code (sec. 2611) be proved only as a will of personal property. This decision was strictly in accordance with the express language of the New York statute.

The Massachusetts Code is very different from the New York and English law, and is in every material respect identical with ours. It is as follows: "Sec. 5. A will which is made out of the Commonwealth and is valid according to the laws of the State or country in which it was made, may be proved and allowed in this Commonwealth, and. shall thereupon have the same effect, as if it had been executed according to the laws of this Commonwealth." *Revised Laws of Mass.* (1902), vol. 2, p. 1273, sec. 5. See *Bailey* v. *Bailey*, 5 Cush. 245; *Slocumb* v. *Slocumb*, 13 Allen 38.

*Joseph Packard* and *Chas. McH. Howard*, for the heirs at law of Marshall G. Wilson.

At common law, or as a general principle of international comity, no rule is better established than that the formal exe-

cution, validity, &c., of wills of real estate (or rather of immovable property, for the rule includes chattels real), are matters to be regulated and determined solely by the law of the State in which such property is situate; in other words, that the *lex loci rei sitae* governs.   I *Jarman on Wills*, pp. I, etc.; *Theobald on Wills*, ch. I; *Wharton, Conflict of Laws*, sec. 587; *Corrie's case*, 2 Bland, 488, 499.

We do not contend that a State cannot, by clear and unambiguous legislation, repeal this general rule of private international law, and provide that the formalities of a will of real estate within its own bounds may be such as are provided by the laws of other States—under such a statute the foreign law becomes, by express adoption, *lex rei sitæ*, or law of the State in which the property is situated.

But we do contend that, in order that such a result may be accomplished, it is necessary that the intention of the Legislature to effect so revolutionary a change should be so clearly expressed as to leave no room for reasonable doubt that such was the intention.

There is no subject as to which the formal requirements are so strict, and as to which local rules and requirements have been so jealously preserved, as in regard to the devolution of title to the real estate within a State's own boundaries.   For many reasons, it is necessary that the laws regulating the transfers thereof should be, as far as possible, fixed, known and definite; since it is upon these that the security and certainty of titles depends.

But if the construction of this statute contended for by the appellee is correct, then it is evident that the law regulating the devolution of title to real estate is, in such cases, of all things the most indefinite, unknown and uncertain.   For the validity of a will of lands in this State may depend, not alone on the laws of any one of the forty and more States now constituting the United States, but upon those of any foreign country, according to the place where the will may be executed, or the testator be domiciled (the latter a fact which can often be determined only with difficulty).   And no matter

how insufficient the requirements of such law may be (the
statute does not even require that such will be in writing), any
testamentary disposition made in conformity therewith will
have to be considered as carrying title to lands here.   A con-
struction which necessarily produces such results should not
be adopted unless it is an unavoidable one.

In England and in many of the United States it is now ex-
pressly provided that, *as to personal property*, a will made out-
side of the State shall be valid if made according to the forms
of the domicile or place where made, while a will of real estate
is still governed by the local law.

In those States in which a different rule has been adopted,
the statutes either refer in express terms to real as well as
personal estates, or provide that a will so executed shall have
the same effect as a will executed with the formalities required
by the local law, or express, in some equally unequivocal
manner, an intention that such wills shall be effective as to
both real and personal estate.

In providing, that wills executed according to the forms re-
quired by the law of the place where made, or of the place of
residence, should be held to be valid, it is submitted that the
Legislature did not intend to adopt the law of any foreign
State as the law under which title to real estate here might be
derived; but only to prevent the sweeping provisions in the
former part of the Act, in relation to wills of personalty, from
invalidating a will of personal property so made.   The "forms
required" by the laws of foreign States relate solely to such
species of property as the State in question has jurisdiction
over; and in fact our whole system of tenure of real estate is
one entirely foreign to the laws of those countries which are
under some form of the civil law.   The validity, therefore, to
which the statute refers, is such validity as is recognized by
the general principles of international comity; and the effect
of the admission to probate provided for by the section is no
greater than the effect of recording was under the Act of 1854
(sec. 347 of the present Code), which, was to have "the
same process and effect', as an admission to probate, and

yet did not render an unwitnessed will sufficient to pass ·real estate in Maryland. Had the Legislature intended that this section should apply to real estate also, it would have so provided in express terms.

The purpose of the Legislature in enacting this section was also, in part, to dispense, in the ·case of a citizen of this State, with the necessity for first probating his will in the foreign jurisdiction and then recording a copy here,·in accordance with the provisions of the Act of 1854, and to provide for the immediate admission of such wills to probate in this State.

Section 329 of Art. 93, provides that every will "executed in due form of law" after June 1st, 1850, shall pass all the real estate which the testator had at the time of his death.

Prior to the enactment of this statute real estate could not pass under a will executed before its acquisition, no matter how express the language of the will might be in indicating such an intention. The rule forbidding this was a rule not of construction but of positive law. *Kemp* v. *McPherson*, 7 H. & J. 320, 335.

The benefit of this section is confined to wills "executed in due form of law," which it is submitted means executed with the formalities required by the·law of Maryland to pass real estate. The real estate which is the subject of this suit, as well as all other.real estate in this country to which Marshall G. Wilson died entitled, was acquired after the execution of his will. So too the provision in the Code regulating sales of real estate by foregn executors having authority under the will, requires that the will should be "executed with the formalities required for the passing of real estate by the laws of this State, and proved according to law." Code 1904, Art. 21, sec. 79.

It is submitted therefore that, at least in a case like the present, where the testator was a native of this State and originally domiciled here, and therefore presumed to be to some extent conversant with its customs, the Legislature has not relaxed the formalities required for the passing of real estate by will. If this be so then the order of the Orphans' Court admitting

this paper to probate will be considered as establishing its va-
lidity as a disposition of personalty only, and, as stated in the
opinion of CHIEF JUDGE MILLER (adopted on appeal as the
opinion of this Court) in *Chase* v. *Stockett*, 72 Md. 235, 249,
its admission to probate was "the probate of an unattested
will, attempting to dispose of real estate, and validly disposing
of personalty and therefore entitled to probate," which has no
effect on the rights of the heirs at law.

The second question presented by this appeal is whether,
even if the formal execution of this will should be held suf-
ficient to carry after-acquired real estate in Maryland, its pro-
visions show an intention to dispose of the real estate which
Marshall G. Wilson acquired in the manner already stated.

1. Whatever construction be given to the section of the
Code which we have considered it is plain that by virtue of its
express provisions, a will like this, executed by a citizen and
native of Maryland, must be "governed, construed and inter-
preted" according to the laws of this State.   In the case o
a will, which, like the present one, is written in a foreign lan-
guage, there are, of course, no local statutes or precedents
defining the meaning of the foreign words and expressions
used; but in such cases the Court is to consider whether the
testator has used expressions which, when translated into
their nearest equivalents in English, are sufficient, under the
rules of construction recognized by our Courts, to include
the property in question.   Cf. 1 *Jarman on Wills*, p. 1.

2. While, therefore, the evidence of the expert witnesses is
to be received and given its due effect in determining the
meaning of the foreign terms which the testator has employed,
the construction of the will, and the determination of the ques-
tions whether it shows an intention to dispose of Maryland real
estate, or of after-acquired Maryland real estate, is exclusively
for this Court, and not one as to which any opinions ad-
vanced by the experts are to control.   And in considering the
translations offered, the Court is entitled to refer also to the
expressions in the original text, for the purpose of ascertaining
the testator's intention.   Thus is a suit at law involving the

construction of a French contract, where a motion was made to exclude from the consideration of the jury the original contract itself, translations of which had been also offered in evidence, it was held that as it was the province of the jury to find the meaning the motion was properly overruled. *Badart* v. *Foulon*, 80 Md. 579, 588.

3. In all cases of construction, the Court should consider the circumstances of the testator at the time at which the will was made, his estate upon which it might operate, etc., in order that the Court may put itself, as far as possible, in the position of the testator, in determining upon what property it was intended to operate, the meaning of its terms as applied to property or persons which might be the subject or object of his testamentary dispositions, etc. *Douglas* v. *Blackford*, 7 Md. 8; *Taylor* v. *Watson*, 35 Md. 594; *Henderson* v. *Henderson*, 64 Md. 185.

4. Assuming that sec. 329 of Article 93 of the Code, providing that a will executed in due form of law shall pass all the real estate which a testator owns at the time of his death, is applicable to a foreign will without two witnesses (and this is a question which is discussed in the first part of this brief), it is still well-settled that this statute has only removed the common law disability to will after acquired real estate, and that the presumption is still against its inclusion and in favor of the heirs. "The effect of the decision in *Rea* v. *Twilley* is to reassert the presumption in favor of the heir," notwithstanding the passage of this statute. *Rizer* v. *Perry*, 58 Md. 112, 137; *Bourke* v. *Boone*, 94 Md. 472, 477; *Rea* v. *Twilley*, 35 Md. 409.

Now, in the present case we are dealing with a will of a native of this State, a testator "originally domiciled" here, and the son of a Maryland land owner, who may be assumed to have been familiar with the distinction in our laws between real and personal property; a testator fully competent, had he so desired, to have made a will clearly expressing in his native language his intentions in regard to any property which he might expect to acquire in this country. And at the time of

making the will in question, his entire estate consisted of a small amount of personal property, except his interest in the house in which he and Mrs. Wilson resided, in France, held jointly by them under the law of that country.

When a will so made comes before a Court of this State "to be governed by and construed and interpreted according to the law of Maryland, without regard to the *lex domicilii*," and the question before the Court is whether its terms include real estate which, in the case of a person so circumstanced, and intending to devise it, would ordinarily be made the subject of a will so drawn and expressed as to furnish a clear muniment of title, then, before the will can be held to include such property, it should appear that the expressions used, when translated into their English equivalents, clearly show an intention to dispose of such property.

But when we come to examine the text of this instrument it appears that the testator has used words which, whatever their technical operation and effect may be as a matter of French law, yet when translated into their ordinary English equivalents are distinctly appropriate to personal property. And it should be borne in mind that we are here dealing with an informal will (as distinguished from the formal notarial will), of a testator whose native language was English, and who, therefore, in preparing such a document would, at least so far as its operation on property in this country was concerned, use such expressions rather in the sense of their ordinary English equivalents than in any technical signification which might be given them by French statutes or French law. These expressions which he has used are as follows:

In the prefatory part of his *testament* (which Mr. Berry translates "testament," a word strictly appropriate to personalty in our law), he states that he intends thereby to dispose of "*tous les biens dont je disposerai a mon deces*," and both of the translators have rendered the word "*biens*" as "property," a translation which is technically supported by a passage from the French Code, cited in the testimony. Yet in the case of a testator so circumstanced it is more probable that he would

have in mind the common English equivalent of "goods" with which the word *"biens"* is so closely connected in its origin and primary significance. Historically, *biens* and *bona* in English common law are the old French and Latin equivalents of the word "goods." Thus the passage in Littleton's Tenures *"Et issint est dez biens,"* "And so it is of goods," etc., is commented on by Coke, who, after stating that *"goods, biens, bona,* includes all chattels," and explaining the distinction between chattels real and personal, concludes, "But by the common law no estate of inheritance or freehold is comprehended under these words." *Coke upon Littleton,* 118*b*, Book II, ch. 11, sec. 177;*Cf. Comyn's Digest,* vol. 2, and title "Biens," pp. 279, etc.

He then constitutes Mrs. Wilson his *"legataire universelle,"* which is translated by both of the witnesses as "legatee" (Mr. Berry, "sole legatee;" Mr. Perkins, "universal legatee"), and states that she is to enjoy and dispose of all that he should "possess" *(tout ce que je possederai)* at the time of his death. These are expressions which under our law are applicable to personal aud not to real estate.

The following authorities show how, even in cases in which the special circumstances here present did not exist, the Courts have refused to hold that ambiguous expressions of similar tenor were sufficient to carry real estate and disinherit the heirs of a testator.

"The remainder of my estate," though following prior dispositions of real as well as personal property. *Walters* v *Walters,* 3 H. & J. 201, "All the residue of my estate," following preceding legacies of personalty only. *McChesney* v. *Bruce,* 1 Md. 344. "All the balance of my estate undisposed of," when similarly used. *Rea* v. *Twilley,* 35 Md. 409.

Where it was apparent from the whole will that the testator was dealing with property in possession, a general residuary clause of the broadest character was held not to include property in which the testator then had a mere possibility coupled with an interest. *Hambleton* v. *Darrington,* 36 Md. 434, 445.

In a case coming up from the District of Columbia (and

therefore, under Maryland common law), in which a French will of General Kosciusko was construed by the Supreme Court, it was held that the expression "*tous mes effets*" (translated "effects") was not broad enough to include money invested in United States funds, etc., in this country, notwithstanding that there was otherwise no residuary clause, and that the effect of such construction was to produce an intestacy. And in this case the prefatory portion of the will contained the expression "*biens*" upon which so much stress is laid in the present case. *Ennis* v. *Smith*, 14 How. 400, 421. It was held by Sir George Jessel that real estate did not pass under a clause in a will appointing the testator's nephew "residuary legatee," partly on the ground that at the time of making the will the testator owned no real estate. *In re Methuen, etc.*, 16 Ch. D. 696; *Cf. Gethin* v. *Allen*, 23 L. R. Ir. 236.

The provisions of the remaining portion of this instrument also show clearly that the testator had in view solely what belonged to him in France, and not any rights in Maryland real estate, to which he subsequently so unexpectedly succeeded. He makes express provision for the contingency of his parents having rights in his estate of which he could not deprive them by will, evidently referring to the system of "forced heirship" which prevails under the civil law, by which a testator, leaving either descendants or parents, cannot, by will, deprive them of a certain proportion of his estate. There could be no such rights, of course, in the case of real estate held under the terms of the law of Maryland, and the reference to such rights further tends to show what property it was that the testator had in contemplation when he executed the paper which is now before the Court.

Boyd, J., delivered the opinion of the Court.

The bill was filed in this case by the appellee to require the appellant to specifically perform a contract to purchase certain real estate in the city of Baltimore. The appellee is the widow of Marshall Gulian Wilson and she claims title to the property through the will of her husband, which was executed

in France, where Mr. Wilson was domiciled at the time the will was executed, although he was a native of Maryland and was still a citizen of this country. The will was written in the French language and was entirely in the handwriting of the testator, but was not witnessed. The heirs at law of Mr. Wilson intervened in this Court, by its permission, and counsel for them were permitted to argue the case. It is not denied that the will was executed according to the forms required by the laws of France, and the personal property left by the testator has been distributed to the appellee by the administrator *cum testamento annexo* of the estate. It is contended, however, that the will is not sufficient to pass the real estate of the deceased, which he acquired after the will was executed. The principal questions presented for our consideration are:

1st. Is a holographic will, not witnessed but executed in accordance with the laws of the country in which it was made, by a citizen of this State domiciled in that country, valid to pass real estate in this State? and

2nd. If that be admitted, did this will pass the real estate in question?

1. It must be conceded that at common law, and as a general principle of international comity, the *lex loci rei sitæ* governs the formal execution, validity, etc., of wills of real estate, but it cannot be denied that a State can alter the general rule and provide by statute that such a will may be valid to pass real estate, if executed according to the laws of the place of its execution. Our first inquiry, therefore, will be directed to ascertaining how far the general rule has been changed in this State. The Act of 1798, ch. 101, required "All devises and bequests of any lands or tenements, devisable by law" to be in writing, signed by the party (or some one in his presence and by his express direction), and to be attested and subscribed in the presence of the devisor by three or four credible witnesses. That language was continued in the Code of 1860 (sec. 301 of Art. 93) and was the law of this State until 1884, when, by ch. 293 of the Acts of Assembly of that year, material changes were made by the Legislature. Prior to that

time wills of personal property were not required to be wit-
nessed, but by the Act of 1884, sec. 301, was amended so as
to read "All devises and bequests of any lands or tenements,
or interest therein, and all bequests of any goods, chattels or
personal property of any kind as described heretofore, shall be
in writing and signed by the party so devising or bequeathing
the same, or by some other person for him, in his presence
and by his express direction, and shall be attested and sub-
scribed in the presence of the said devisor by two or more
credible witnesses, or else they shall be utterly void and of
none effect." That is now sec. 317 of Art. 93 of the Code of
1904. Section 306 as amended by the Act of 1884 provided
that "no nuncupative will shall hereafter be valid in this
State," but authorized soldiers in actual military service, and
mariners at sea to dispose of movables, wages and personal
estate. Section 307, as passed by the same Act (1884), pro-
vided that "Every will and other testamentary instrument
made out of this State *by a citizen thereof* shall be held to be
valid, if the same be made according to the forms required by
the law of the place where the same was made, or by the law
of the place where such person was residing when the same
was made, and the said will, when so executed, shall be ad-
mitted to probate in any Orphans' Court of this State." By
ch. 544 of the Acts of 1888, that section was amended by
striking out the words "by a citizen thereof," and in other re-
spects remained as enacted by the Act of 1884. The Act of
1894, ch. 151, amended that section and is the present law of
the State on the subject, being sec. 327 of Art. 93 of the Code
of 1904, and will be referred to more particularly later on.

In *Olivet* v. *Whitworth,* 82 Md. 258, we had occasion to
consider this statute, as enacted by the Act of 1888, and we
held that a holographic will, executed by Mrs. Olivet at Ge-
neva in January, 1893, together with a holographic codicil
executed at Nice in February, 1893 (neither of them having
been witnessed), was a valid execution of a power reserved in
a deed of trust, to nominate by her last will and testament the
person or persons to whom certain money held in trust should

go after her death—thereby settling the question in this State
in so far as personalty is concerned, but no real property was
involved.   We cannot understand, however, how any distinc-
tion can be made under this statute between real and personal
property; since the Act of 1884.   The same formalities were
required by that Act in the execution of wills of personal
property as in those of real estate, and by sec. 301 it was de-
clared that unless executed as therein required, "they shall be
utterly void and of none effect."   Manifestly then a bequest
of personal property, or a devise of real estate, not attested by
two or more credible witnesses, was under that section utterly
void, and the only provision that saved the will under consid-
eration in *Olivet* v. *Whitworth,* from being so declared was sec.
307, as enacted by the Act of 1884 and amended by the Act
of 1888.    Inasmuch as the Legislature provided in sec. 307,
that "*Every* will, and other testamentary instrument, made out
of the State *shall be held to be valid,*" if executed as therein
stated, it cannot be said that some wills so made shall be *valid*,
and others so made shall be *invalid*, without ignoring the ex-
press language of the statute.   Section 307 was unquestion-
ably intended to exempt a will made out of the State (if made
according to the forms required by the law of the place where
it was executed, or where the testator was residing) from the
requirements of sec. 301, and as the Legislature saw fit to re-
quire the same formalities in the execution of wills of personal
property as in those of real property, the Court would not be
justified in holding that sec. 307 was applicable to wills of
personalty alone when the manifest intention of the Legisla-
ture was to apply it to both classes.

It was suggested at the argument that other sections of Art.
93 tended to sustain the position of the heirs at law, and
sections 344 and 347 of that Article (Code of 1904) were men-
tioned.   But we do not think they reflect upon the question
before us.   Section 344 simply makes provision for obtaining
evidence of certain classes of wills out of this State.   Section
347 authorizes any person interested in a devise or bequest of
any property within this State, contained in a will admitted to

probate and recorded in some other State or country, to procure a copy of the will with certificate of probate (properly authenticated), and file it in the office of the Register of Wills of any county or the city of Baltimore. The register is required to record it and a copy of that record is made evidence. But we do not understand that either of those sections could be held to make any distinction between wills of real property and those of personalty since the Act of 1884 was passed, requiring them to be executed in the same way. Prior to the passage of the present law, validating wills made out of the State in accordance with the laws of the place where they are executed, of course wills of real property, in order to pass title to land in this State, were required to be executed according to section 301 (now 317) of Art. 93, but that does not throw any light on the question before us, as we must determine it according to existing laws.

Nor can we see how section 329 of Art. 93, or section 79 of Art. 21, can aid us in reaching a proper conclusion. The former provides that every will "executed in due form of law" shall pass all the real estate which the testator had at the time of his death. A will executed according to section 327 is as much "in due form of law" as one executed as provided in section 317. The other statute referred to (sec. 79 of Art. 21) merely provides for deeds of conveyance of lands in this State by executors of wills of non-residents, "executed with the formalties required for the passing of real estate by the laws of this State." If it be conceded that that only referred to wills executed according to section 317 it would not reflect upon this case. That statute was originally passed in 1872, when no such statute as that now being considered was in force, and it presents a wholly different question. When our legislators authorized foreign executors to thus sell real estate it was going quite far, but, as it was dealing with sales by them of real estate in Maryland, it was perfectly proper that the wills should be "executed with the formalities required for the passing of real estate by the laws of this State." Whether or not that is broad enough to now include wills executed ac-

cording to the laws of some other State is perhaps immaterial for the purposes of this case, but we do not want to be understood as intimating that it is not.

The Act of 1894, chap. 151 (now section 327 of the Code of 1904), makes the position of the appellee even stronger than it would have been under the Act of 1888. That provides that *"every will"* made out of the State shall be held to be valid in Maryland (1) if "made according to the forms required by the law of the place where the same was made," or (2) "by the law of the place where the testator was domiciled when the same was made," or (3) "according to the forms required by the law of this State." It will be observed that that Act gives the same effect to a will made out of the State according to the forms required by the law of the place where it is made, or by the law of the testator's domicile, as to a will executed according to the forms required by the law of this State. In either case the statute declares the will *"shall be held to be valid in Maryland—'valid'* for what? Unquestionably for all purposes of a will—to pass real estate, as well as personalty. No one can doubt that it would be thus valid if executed according to the forms required by our law, and no rule of construction that we are aware of would justify the Court in holding that it would in such case be valid, but would be invalid if one of the other alternative methods authorized by the statute be followed.

That Act then provides that if the testator was originally domiciled in Maryland, although at the time of making the will, or at the time of his death, he may be domiciled elsewhere, the will "then so executed shall be admitted to probate, in any Orphans' Court of this State." If the testator was not originally domiciled in Maryland, there is no provision in this statute for probate in this State, but then those interested in property (*real or personal,* as shown by the language of the statute) can procure a copy and have it recorded here under section 347 above referred to. The concluding part of this section will be considered under the second branch of this opinion.

It seems clear to us, therefore, that the statute now embodied in section 327 of Art. 93 is as applicable to wills of real estate as to those of personalty alone.   We do not fear such results from that construction as was suggested at the argument. Indeed there was perhaps more danger from wills made out of, or in this State, prior to 1884, than can possibly be feared now.   As is well known, much of the most valuable property in the city of Baltimore, and some other parts of the State, is leasehold and as that is personal property under our decisions it passed by a will, or testamentary paper, sufficient to dispose of personal property.   *Devecmon* v. *Devecmon*, 43 Md. 335. As prior to 1884 it was not necessary to have witnesses to a will of that character, there was certainly as much, if not more, danger to be feared from such wills than from those ·executed under the provisions of the statute now embodied in section 327.   As we have seen, the Act of 1884 making these radical changes in our laws applicable to wills expressly prohibited nuncupative wills, only making ·provision for soldiers in service and mariners at sea, and we. need ·not disturb ourselves about the suggested dangers of wills made in countries governed by uncivilized people, according to their forms.   Our statute provides for wills made according to *law*, and it will be time enough to determine whether one made according to the customs of barbarians or savages is embraced in that term, when some person having property in Maryland attempts to follow such custom.   But whatever the dangers may be, we must accept the law as it is, and follow what seems to us to be the clear intention of our law-makers.

Counsel for the heirs at law have referred to statutes in a number of States and in England to show that they provide that wills disposing of personal property, if made according to the forms of the domicile, are valid, while those devising real estate are still governed by the law of the *situs*, but that is a question for the respective Legislatures.   In· Massachusetts, Connecticut and Wisconsin statutes very similar to ours have been passed.   See *Bailey* v. *Bailey*, 5 Cush. 245; *Slocum* v. *Slocum*, 13 Allan, 38; *Irwin's Appeal*, 33 Conn. 140; *Gen-*

*eral Statutes of Conn.*, chap. 24, sec. 293; *Wisconsiu Statutes*, vol. 1, page 1648.

The intentions of testators have frequently failed because they executed their wills according to the forms prescribed by the laws of their respective domiciles, which were not in accordance with the laws of the States where some of their lands were situated, and in this country where we have so many States, each one of which can determine such question for itself, it cannot be doubted that such a statute as ours is more likely to accomplish the great object of the law applicable to wills—to carry out the intention of the testator—than the common law rule.    Perhaps nothing has shaken the respect of even intelligent laymen for the wisdom of the law more than the fact that a will will pass real estate in one State and be utterly null and void as to that in an adjoining State.    Most attorneys in active practice have doubtless realized the difficulties arising from so many statutes on the subject in force in this country, when called upon to hastily draw a will for a person who owned real estate in different States, and although the wisdom of such a statute as ours is a question for the Legislature rather than the Courts, it is, to say the least, not so unreasonable as to cause us to record any objection to it.

2. After providing for the probate of the will of a testator originally domiciled in Maryland, section 327 concludes thus: "and when so admitted shall be governed by and construed and interpreted according to the law of Maryland, without regard to the *lex domicilii* unless the testator shall expressly declare a contrary intention in said will or testamentary instrument."    We must, therefore, construe this will with that provision in mind.    It was written, as we have said, in the French language.    There are two translations in the record—one made by Walter V. P. Berry, an attorney at law residing at Washington, D. C., who has made a speciality of international law and is counsel for a number of embassies and legations, including the French Embassy, and another made by William H. Perkins, an attorney of Baltimore City, whose mother and her parents were French.    He testified that he spoke French

before he spoke English and has always kept up his knowl-
edge of the language, has spent a great deal of time in France
and has read and studied the French law.   A. Marshall Elliott,
who is professor of romance language at the Johns Hopkins
University, testified that he considered that the translation made
by Mr. Perkins the better of the two, but there is no very
material difference between them.   Mr. Berry translated the
beginning "I,   *   *   *   declare and intend to dispose in the
following manner of *all the property* of which I *could* dispose
at my death," while the other translation reads "which I *shall*
dispose of. at my death."   The original in the will translated
"of all the property" is "de tous les biens."   Doctor Elliott
testified that the expression "tous les biens" included both real
and personal property, and that the words "les biens" when
used with "tous" were never applied to personal property
alone.   Mr. Perkins said "de tous les biens" was the equiva-
lent of "all my property, real, personal or mixed."   He also
said that section 516 of the French Code showed that the word
"biens" as there used included real and personal property.
That Code says "tous les biens sont meubles ou immeubles"
—the words "meubles ou immeubles" meaning movable and
immovable property, which is the equivalent to our real and
personal property.   In Bouvier's Law Dictionary the word
"Biens" is defined "property of every description, except
estates of freehold and inheritance" but it goes on to say: "In
the French law this term includes all kinds of property, real
and personal.   Biens are divided into *biens meubles*, movable
property, and *biens immeubles*, immovable property."   In 5
*Cyc.*, 686, note 71, it is said of it "Real estate is included in
the term as employed by the civilian and continental jurists."
JUDGE STORY, in his work on Conflict of Laws, says "Foreign
jurists commonly in the term 'biens' include all sorts of prop-
erty, movable and immovable."   We thus see from the evi-
dence in the record and from law books what the term means
in France, where this will was drawn.

Then the translation of Mr. Berry proceeds "I appoint for
my *sole* legatee Marie Eugenie Tanguy, my wife, intending

that she enjoy and dispose as absolute property *of all that I may possess at the time of my death*," while the other is "I constitute my wife, Marie Eugenie Tanguy, my *universal* legatee desiring and intending that she shall have an absolute estate with full power to enjoy and dispose of *all that I possess at the moment of my death.*" The expression used in the original is "J'institute pour ma legataire universelle." Dr. Elliott translates "ma legataire universelle" to mean "my universal legatee," covering the whole property, real and personal. Mr. Perkins said he preferred "universal legatee" and that the expression used indicated that the testator intended to leave every species of property he had and, with our limited knowledge of French, that seems to us to be the more correct translation. The testator then provided that in case there were any children by their marriage the "legacy" to his wife should be reduced by one-fourth absolutely and one-fourth for her temporary use, and in the original added "avec dispense de faire emploi des valeurs mobilieres et de donner caution." In one translation in the record that is translated "with power to make use of *the personal property* and to give security (for its use)," and in the other "without being required to convert *the personal property* or to give bond." Whichever may be the better translation, both refer to *"the personal property"*— "des valeurs mobilieres" being so translated—thus indicating that the testator had in mind both real and personal property as it was unnecessary to use the word "personal"—"mobilieres"—if he was intending to dispose of no other kind of property. The testator, it is true, used the terms which have been translated "legatee" and "legacy" in his will, but those expressions have different meanings in the French Code and civil law from what they usually have under our system, but even in this country they may be used in reference to real property. In 18 *Am. & Eng. Ency. of Law,* 710, it is said: "The word 'legacy' is identical in meaning with 'bequest' and primarily is applicable only to personalty; but it may refer to real estate, if the testator so intended." Indeed 317 of Art. 93 of our Code which we cited above, speaks of "All devises

and bequests of any lands or tenements, or interest therein," and the word "bequests" has been used in that connection since 1798 in this State. That the word "legatee" may include "devises" see note in 18 *Am. & Eng. Ency. of Law*, 821, where many cases are cited.

There would seem to be no doubt that the terms used in this will would *in France* include both real and personal property. It only remains to determine whether the concluding part of sec. 327 of Art. 93, quoted above, requires us to place any other interpretation upon those terms. The provision— "shall be governed by and construed and interpreted according to the law of Maryland without regard to the *lex domicilii*" certainly cannot mean that we must give a foreign word or expression a different meaning from that given it in the country where the will was written. According to the law of Maryland the great object to be attained in construing a will is to ascertain the intention of the testator. Would it not therefore be remarkable if when called upon to construe a will written in a foreign language a Maryland Court must refuse to accept the meaning of a word, or expression used in a will that is its accepted meaning in the country where that language is used, and where the will is written? The first thing necessary is to obtain, as far as possible, a correct translation of the will, when written in another language, and after that is done then determine the effect of the language under our law. If "tous les biens" means "all the property" when used in France, why should we give it any other meaning when we find it in a will made in that country? If we say it only means personal property we give to it a meaning that the language used does not justify, if the translations before us are correct. So with the expression "legataire universelle." If that expression means in France a person to whom "every species of property that he (the testator) had" is given, or "legatee covering his whole property," as the testimony shows, why should we say that because the English word "legatee" generally applies only to personal property we will so interpret that expression in this will? To do so would be to reject one of

the established rules in ascertaining the meaning of wills—that the Court should as far as possible place itself in the position of a testator.　If a person goes to a lawyer or notary in France to have a will drawn and tells him he desires to leave all his property to his wife, and the lawyer or notary uses terms that in the French language mean precisely what the testator intends, although perhaps in this country they would or might have a more limited meaning, is it to be said that we must adopt the latter, although the evidence in the case shows what it does mean in France?　If a testator in another State left all of his personal property to his wife and the rest of his property to his child, and he had a leasehold estate in this State, under this statute we might be required to hold that the bequests to his wife included the leasehold, although that was not regarded as personal property in the State where the will was drawn, because that would simply require a legal construction of a will using a well known term.　But the question before us is; "what did the testator mean by such expressions as "tous les biens," "legataire universelle," etc.? and the only possible way to determine it is to have competent persons familiar with the French language translate them, unless the Court is sufficiently versed in French to understand their meaning in the connection in which they are used. When that is done, the will must then be "governed by and construed and interpreted according to the law of Maryland" —in a word, after the will, if written in a foreign language, is properly translated and the meaning of words and terms therein used ascertained, the law of this State, and not that of the testator's domicile, is *under this statute* to control the Court in construing and interpreting it.

It is also contended that the will which is dated April 30th, 1901, does not apply to this real estate for another reason. The mother of Marshall G. Wilson died March the 12th, *1905*, and by her last will and testament left this property to her husband, James G. Wilson, who predeceased his wife. That devise did not lapse by reason of sec. 320 of Art. 93, and Marshall G. Wilson being the sole heir at law of his father

the property passed to him. Sec. 329 of Art. 93 provides that "Every last will and testament executed *in due form of law* after the first day of June, 1850, shall pass all the real estate which the testator had at the time of his death." We have already indicated that a will executed as this, is "*in due form of law*," and we will not further discuss that. But it is said, and correctly so, that this provision will not pass the real estate of a testator, regardless of his intention. That has been so decided in *Rea* v. *Twilley*, 35 Md. 409; *Rizer* v. *Berry*, 58 Md. 112, and *Bourke* v. *Boone*, 94 Md. 472. But we do not find anything in this will to indicate that the testator did not intend to leave to his wife all his property, whatever it might be and whether real or personal. The will expressly says as shown by one translation, "intending that she enjoy and dispose as absolute property of *all that I may possess at the time of my death*," and according to the other translation "desiring and intending that she shall have an absolute estate with full power to enjoy and dispose of *all that I possess at the moment of my death*"—which are in substance the same thing. That expression, taken in connection with others we have referred to, shows that his intention was to give her *all the property he had at the time of his death*, and the fact that he did not know when he made his will that he would acquire this and other property cannot deprive his wife of them. The statute (sec. 329) would be of little use if such a fact could deprive a devisee of after-acquired property. The cases of *Stannard* v. *Barnum*, 51 Md. 451, and *Dalrymple* v. *Gamble*, 68 Md. 528, are sufficiently conclusive of this point to relieve us of further discussion of it. We are of the opinion that what we referred to above as the two principal questions to be determined in this case must be answered in the affirmative and the decree will be affirmed. We will require the heirs at law to pay the costs in this Court and the appellant to pay the costs below.

*Decree affirmed, the heirs at law appearing in this case to pay the costs in this Court, including that of transmitting the record, and the appellant (Thomas J. Lindsay) to pay the costs below.*

(Decided March 27th, 1906.)