HELEN RABE *v.* JOSEPH L. McALLISTER,
ADMINISTRATOR C. T. A.

[No. 6, October Term, 1939.]

*Decided October 26th, 1939.*

The cause was argued before BOND, C. J., OFFUTT, PARKE, SLOAN, MITCHELL, SHEHAN, JOHNSON, and DELAPLAINE, JJ.

*H. Anthony Mueller* and *John C. Kump,* submitting on brief, for the appellant.

*Daniel S. Sullivan,* with whom was *Daniel S. Sullivan, Jr.,* on the brief, for the appellee.

PARKE, J., delivered the opinion of the Court.

Pauline Gottschalt, a citizen of Germany, whose domicile is Baltimore City, in the State of Maryland, died on or about May 22nd, 1937, in Oberkesselsdorf, Silesia, Germany, where she resided at the time of her death. The decedent had lived for many years in Baltimore City. She executed there, on June 7th, 1927, a will which disposed of all her property. After the usual provision for the payment of her debts and funeral expenses, she directed that her executrix should have her body sent to Germany for interment in the family vault and that her executrix make provision to keep the vault in perpetual care. She then devised and bequeathed absolutely to her nephew, Paul J. Hentschel, all of her property of every kind and wheresoever situate. The executrix appointed was Amelia H. Hentschel, the wife of Paul J. Hentschel. After the death of Pauline Gottschalt, this will was, on December 1st, 1937, admitted to probate by the Orphans' Court of Baltimore City. Upon the renunciation of the executrix, Joseph L. McAllister was appointed by that court the administrator with the will annexed. He qualified and is engaged in the administration of the estate. The assets are a deposit of $25,000 in a savings bank of Baltimore City, and 10,000 marks, or about $4000, in Germany.

Subsequently to these proceedings, there were filed on August 25th, 1938, in the office of the register of wills for Baltimore City, two holograph wills which the decedent had executed in Germany. The first is dated April 29th, 1933, and the second May 23rd, 1935. The decedent had gone to Germany in 1927, and had stayed there until her death.

These wills are short, and were written in German. Their translations follow in the order of their execution:

"My Last Will

"In case of my death I appoint as sole heir Karl Ritterfeld, teacher of Kesselsdorf, with the provision to give the Evangelical Church Congregation Kesselsdorf, as legacy the sum of 2 thousand two thousand marks. The heir Karl Ritterfeld can give to the relatives according to his own discretion.

"Kesselsdorf, April 29, 1933.

"(Signed)    Pauline Gottschalt."

The second paper reads:

"I have executed a Last Will, which is in possession of the Reverend Pastor of Kesselsdorf and Mr. Ritterfeld, teacher, now in Petersdorf, Riesengebirge. I revoke this Last Will and provide that my heirs themselves shall keep the vault in order.

"Oberkesselsdorf, May 23, 1935.

"(Signed)    Pauline Gottschalt.

"3 words cancelled."

These holograph wills are valid testamentary papers in Germany. They ·were there admitted to probate and recorded. Their copies and the certificates of probate and their authentication were duly presented to the register of wills for Baltimore City, who filed the documents in his office on August 25th, 1938. Code, art. 93, sec. 364; *Wright v. Gilbert,* 51 Md. 146; *Beatty v. Mason,* 30 Md. 409, 412; *Lindsay v. Wilson,* 103 Md. 252, 267, 63 A. 566; *Olivet v. Whitworth,* 82 Md. 258, 276, 33 A. 723.

With only these two documents before it, the express revocation of the first by the second caused the probate court in Germany to declare and certify that the legal order of succession took effect, and that the heirs had been proved by the court's included certificate of inheritance of July 29th, 1937. Among the heirs at law so certified is Helene Rabe, of Lowenburg, Silesia, Germany, who, through her attorney, filed on November 20th, 1938, a petition wherein it is alleged that the two later holograph wills supersede the first will of June 27th, 1927, under which Joseph L. McAllister has been ap-

pointed administrator *cum testamento annexo;* and, consequently, the entire property of Pauline Gottschalt passes to the heirs at law set forth in the petition. The relief prayed by the petition is that probate of the first will and the grant of letters thereon of administration *cum testamento annexo* be revoked; and that the third will be declared operative, and that letters of administration *cum testamento annexo* be granted on the final will unto the lawyer for the plaintiff. On this petition there was an order *nisi* passed which brought the matter before the court. After hearing, it was determined that the first instrument was not revoked but was a final and effective last will and testament to the extent not inconsistent with the will of May 23rd, 1935. The appeal is from this decision and the dismissal of the petition of Helene Rabe.

As the second and third wills are validly executed under the German law, and as the testatrix was originally domiciled in Maryland, although at the time of making the wills or at the time of her death she may be domiciled elsewhere, the statute enacts that the wills shall be admitted to probate in any orphans' court of the State, and when so admitted shall be governed by and construed and interpreted according to the law of Maryland, without regard to the *lex domicilii,* unless the testator shall expressly declare a contrary intention in said will or testamentary instrument. Code, art. 93, sec. 344; *Lindsay v. Wilson,* 103 Md. 252, 266, 63 A. 566; *Olivet v. Whitworth,* 82 Md. 258, 276, 33 A. 723; *Johns Hopkins University v. Uhrig,* 145 Md. 114, 125 A. 606.

Furthermore, the statute provides that no will in writing containing a devise or bequest, "nor any clause thereof, shall be revocable otherwise than by some other will or codicil in writing, or other writing declaring the same, or by burning, cancelling, tearing or obliterating the same, by the testator himself or in his presence, and by his direction and consent, but all devises and bequests so made shall remain and continue in force until the same be destroyed by burning, cancelling, tearing or obliter-

ating the same by the testator or by his direction, in manner aforesaid, unless the same be altered by some other will or codicil in writing or other writing of the devisor signed as hereinbefore said in the presence of two or more witnesses declaring the same." Article 93, section 333. It should be observed that modes of revocation given in the statute are not exclusive, since there may be an implied revocation, as where the subject matter of testamentary disposition is not the property of the testator at the time of his death (*Krieg v. McComas,* 126 Md. 377, 382, 95 A. 68; *Joynes v. Hamilton,* 98 Md. 665, 683, 57 A. 25) ; or, generally, if, after the time of the execution of the will, the testator should marry and have children born of this marriage who are not provided for (*Sedwick v. Sedwick,* June Term, 1884, unreported; *Baldwin v. Spriggs,* 65 Md. 373, 380, 5 A. 295; *Redwood v. Howison,* 129 Md. 577, 589, 99 A. 863) ; or, as provided by statute, there is a later inconsistent or revocatory will or testamentary paper which is executed in conformity with the law of the place of its execution, or of the testator's domicile or of this State. Code, art. 93, sec. 344; *Lindsay v. Wilson,* 103 Md. 252, 266, 63 A. 566; *Olivet v. Whitworth,* 82 Md. 258, 276, 33 A. 723; *Gardner v. McNeal,* 117 Md. 27, 31, 82 A. 988.

Since the testatrix was domiciled in Maryland when she executed the first will, and had not lost her domicile by her residence abroad, the question of the revocation of the probate of a will and of the granting or refusing to grant probate are a matter within the exclusive jurisdiction of the Orphans' Court. It had, therefore, to determine whether the probate of the first will should be revoked, and whether the second and third holograph wills should be admitted to probate or should be rejected. *Home for Aged v. Bantz,* 106 Md. 147, 152, 66 A. 701; *Johns v. Hodges,* 62 Md. 525.

The first will of 1927 was impliedly revoked by the second, and first holograph, will of 1933. The record is clear and without conflict that all the property disposed of in the first instrument is the identical property which

was intended to pass under the second. As the disposition of the identical property in the second will is wholly inconsistent with that of the first, the second will revokes by implication, and supersedes, the first will. *Gardner v. McNeal,* 117 Md. 27, 31, 82 A. 988. The second will, however, may not be admitted to probate because it was specifically and unqualifiedly revoked by direct and plain terms of the third, and second holograph, will of 1935. *Colvin v. Warford,* 20 Md. 357, 391, 394.

Thus the problems of the Orphans' Court were (1) whether the probate of the first will of 1927 should be revoked, and in the place thereof, the third will of 1935 be admitted to probate as the sole last will of the decedent; or (2) whether the probate of the third will be rejected, and that of the first will be affirmed; or (3) whether the probate of the first will should be affirmed, and the third will be admitted to probate, in order that the two should together constitute the will of the testatrix. In the determination of these questions of probate, the orphans' court has exclusive jurisdiction. The primary and fundamental requisite for admission to probate is a valid will. Not only does the validity of a proffered will depend upon its form and execution, but it must be in existence as a testamentary instrument as of the death of the testator. To be thus effectively in existence, the will need not be an exclusive nor complete disposition of the estate, and may be read in connection with other testamentary documents which are entitled to probate. A minimum requirement is that it must be effective for some testamentary purpose or disposition. So, of necessity, its probative existence depends upon its not having been wholly revoked as a testamentary paper. The orphans' court may, therefore, consider whether the instrument propounded is revoked so as to have no testamentary effect. In this consideration, the terms of the instruments involved, with the pertinent accompanying facts and circumstances, may be considered, but solely with reference to the issue

of the existence as a testamentary paper of the questioned document. If this inquiry should lead to the incidental construction of a paper writing, the construction would be permitted, while restricted to its bearing on the issue of the subsistence or revocation of the testamentary instrument. *Longerbeam v. Iser*, 159 Md. 244, 246, 247, 150 A. 793; *Collins v. Cambridge Hospital*, 158 Md. 112, 114, 115, 148 A. 114.

The effect of the admission of a testamentary paper to probate is merely to establish its *prima facie factum* or subsistence as an operative testamentary document at the time of the death of the testator. *Bagby, Executor & Administrators* (2nd Ed.), sec. 3; *Bradley v. Bradley*, 119 Md. 645, 649-654, 87 A. 390; *Home for the Aged v. Bantz*, 106 Md. 147, 152, 153, 66 A. 701; *Murray v. Conley*, 124 Md. 218, 222, 92 A. 476.

The validity and legal construction of the provisions of the testamentary documents are matters for subsequent adjudication by the appropriate courts. *Supra; Ramsay v. Welby*, 63 Md. 584, 586; *Eshbach v. Collins*, 61 Md. 478, 48 Am. Rep. 123; *Estep v. Morris*, 38 Md. 417, 426; *Schull v. Murray*, 32 Md. 9, 16; *Schley v. McCeney*, 36 Md. 266, 275; *Michael v. Baker*, 12 Md. 158, 169; *Buchanan v. Turner*, 26 Md. 1, 4; *Johns v. Hodges*, 62 Md. 525, 536.

Since the revocation of the first will is implied from the inconsistent provisions of the later and second will, a revival of he first will depends upon the second will being revoked. *Bagby, Executors & Administrators* (2nd Ed.), sec. 7, p. 12; *Colvin v. Warford*, 20 Md. 357, 391.

In this case the second will is expressly revoked by the third, and the legal effect in Maryland of this explicit revocation is to revive the first will.

The effect upon a prior will, which has been revoked by implication because of the conflict with the provisions of a second will, when this second will is later expressly revoked by a third will, varies greatly in the several jurisdictions. The conflict of decisions is shown, and the

cases are classified according to their distinctions in the annotations found in several volumes of the American Law Reports, where typical cases are reported. *Whitehill v. Halbing,* 98 Conn. 21, 118 A. 454, 28 A. L. R. 895-926; *Neibling v. Methodist Orphans' Home Assn.,* 315 Mo. 578, 286 S. W. 58, 51 A. L. R. 639-731. It will not be necessary to state and discuss these decisions, as the rule was early considered and determined by this court in *Colvin v. Warford,* 1863, 20 Md. 357, which stated its conclusions in this language:

"The question, as to the revival of a previous will, thus appears to be reduced to one of fact dependent on all the evidence going to show the testator's intention, and not one of legal presumption. That the cancellation of a revoking will, *prima facie,* is evidence of intention to revive the previous will, is true, but it is obvious that the presumption of that intention from the mere act of cancellation may be strengthened, qualified or rebutted altogether, by evidence of the attending circumstances and probable motives of the testator. *Lawson v. Morrison,* 2 Dall. 286, 1 L. Ed. 384; *Boudinot v. Bradford,* 2 Dall. 266, 1 L. Ed. 375. In the absence of such evidence, the proposition that the act of cancellation alone is evidence of intention to revive the previous will would certainly seem to be free from objection. We conclude, therefore, that the destruction of the will of 1847 did not revive the will of 1845, unless it was further found that the testatrix so intended, and that the destruction of the will of 1847, if done by her when sane, was *prima facie* evidence of that intention." 20 Md. at page 393.

So, it is clear that the act of the testatrix in revoking in terms the second will is *prima facie* evidence of her intention to revive the first will. The third will consists of two sentences. In the first one the testatrix merely identified the second will by naming its custodians. In the second, the testatrix revoked the second will by the first clause of the sentence, and concluded with this second clause, "and (I) provide that my heirs

themselves shall keep the vault in order." If these words be given their natural effect, she does not dispose of any of her estate by this third will, but attempts to impose upon her "heirs themselves" the duty of keeping a family vault in order. She does not intimate who these "heirs" are, or that they are to receive a penny of her estate. No executor is named. So, there is apparently no conflict in the first and third wills, which must be construed together. The petitioner argues that this third will may be construed to give all her estate to her legal heirs at law. If there be such a gift it must be built upon inference, as there is none in terms. If such a gift be established by construction, another difficulty arises in ascertaining who were meant to be included in the word "heirs."

At common law "heirs" was used to denote those who take land by inheritance; and "next of kin" was the general term to indicate those who take personalty by succession. The colloquial meaning of "heirs" includes the person upon whom property devolves on the death of another either by will or by law. Again, where the Roman or modern civil law prevails, the word "heir" has a much more comprehensive meaning than in the common law. 29 *C. J.* 287, *et seq.* In 1 *Bouvier's Law Dictionary* (Rawles' 3rd Rev.), p. 1432, will be found the information, "The term heir has a very different signification at common law from what it has in those states and countries which have adopted the civil law. In the latter, the term applies to all persons who are called to the succession, whether by act of the party or by operation of law." Thus, in the civil law, one to whom all the estate would be given by will would be called the testamentary heir.

The problems indicated by the contention of the petitioner is accordingly one of construction of the two wills admitted to probate, but these problems are not brought up on this appeal. The question before the orphans' court and here is one of probate.

The ruling of the orphans' court in refusing to rescind the probate of the first will, in the absence of any testimony to the contrary, is supported under the circumstances by the evidence of the testatrix's intention to revive it by the express revocation of the second will. It should further be noted that the petitioner was not in a position to question the probate of the first will on December 1st, 1937. Although translated in Baltimore on August 3rd, 1938, it was not until August 25th, 1938, that the two holograph wills were exhibited and filed with the register of wills. At this time the petitioner, Helene Rabe, a resident of Germany, or her counsel of record in Baltimore, and her counsel in Germany, knew, or by the exercise of ordinary diligence could have early known, of the probate of the first will on December 1st, 1937. Nevertheless, the petition of Helene Rabe, which was signed and verified by her attorney in Baltimore, was not filed until November 20th, 1938; in other words, almost one year after the probate of the first will, and nearly three months later than the exhibit and filing of the copies of the holograph wills in the office of the register of wills of Baltimore City, and over forty days after that officer had caused these wills to be recorded.

These circumstances fairly put the petitioner on notice, and her delay to act for more than thirty days after notice of the probate of the first will was either actually known or, under the circumstances must be imputed to her, bars her right to ask for a revocation of the probate. *Stanley v. Safe Deposit Co.*, 88 Md. 401, 407, 41 A. 790; *Hunter v. Baker*, 154 Md. 307, 330, 331, 141 A. 368; *Redman v. Chance*, 32 Md. 42, 53.

The point here noted was not made below, so it must be considered as waived. In order that silence may not be given the effect of sanctioning the delay, the court has called attention to the rule. The conclusion of the court here is based upon the theory of the revival of the first will by the revocation of the second, with no revocatory conflict between the first and third wills.

No error is perceived in the probate of the third will, In fact its probate is conceded by the petitioner. According to the German law, it is testamentary in form and is the last executed paper. Its meaning and effect as a will, when considered in connection with the first will, are not for the determination of the orphans' court but of other tribunals having jurisdiction. *Supra.*

,For the reasons here assigned the order of the Orphans' Court of Baltimore City will be affirmed.

*Order affirmed, with costs to the appellee.*